**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Lexington Insurance Company, | No. CV-12-02119-PHX-JAT |
|---|---|
| Plaintiff/Counterdefendant, | **ORDER** |
| v. | |
| Scott Homes Multifamily Incorporated, et al., | |
| Defendants/Counterclaimants. | |

Plaintiff Lexington Insurance Company ("Lexington") and Defendants Silverbell 290 L.P. and Scott Homes Multifamily Incorporated (collectively "Silverbell") have fully briefed the Court on offsetting the subcontractor payments already received by Silverbell against the final judgment in this case. The Court now rules on the issues of offsets and pre- and post-judgment interest.

**I.  Analysis**

Silverbell contends that Lexington is not entitled to any offsets against the judgment and requests the Court award $5,000,000. (Doc. 472 at 14). Lexington responds that it is entitled to $2,149,341.99 in offsets and Silverbell should be awarded $2,850,658.01. (Doc. 479 at 14). The parties disagree on several points, and the Court addresses each in turn.

**A.  Uncontested Issues**

Both parties agree that the judgment in this case is limited to the $6,000,000 award

in the Scott Homes judgment from the underlying state court litigation. (Doc. 472 at 17; Doc. 478 at 2; Doc. 479 at 2; Ex. 161). The parties have further stipulated that the $1,000,000 Evanston payment should be deducted from the Scott Homes judgment, bringing the maximum possible judgment to $5,000,000. (Doc. 472 at 4; Doc. 478 at 2; Doc. 479 at 2). This Court previously ruled that for Silverbell "to collect the full $5 million against Lexington, Silverbell must show that it did not receive payments from other sources for those sources' liability under the Stipulated Judgment (other than the payment from Evanston, which reduces the $6 million amount of the Stipulated Judgment to $5 million)." (Doc. 323 at 32).

### B. "Loss" Definition

Silverbell revives its argument that the definition of "loss" in the Lexington Excess Policy does not entitle Lexington to an offset for the subcontractor payments. (Doc. 472 at 12). However, Lexington correctly observes that this Court has already ruled on this issue. (Doc. 470 at 3). This Court previously held that

> [t]he Lexington Excess Policy's plain language provides for coverage when Scott Homes becomes legally obligated to pay a portion of a loss as compensatory damages by reason of the exhaustion of the Evanston Policy. This loss is then limited to the "sum paid in settlement of losses for which [Lexington] is liable after making deductions for all recoveries, salvages, and other insurance . . . . (Doc. 270-1 at 7). According to this plain language, this limitation appropriately adjusts downward the scope of the insurer's coverage obligation as an excess insurer if the insured is able to recover some of its losses from another source. Lexington is obligated to pay for covered losses to its insured upon the exhaustion of the underlying policy, but Lexington is never obligated to pay for covered losses that have already been paid by another source.

(Doc. 323 at 31). This Court has additionally held that

> the Lexington Excess Policy uses the defined term "loss" in describing the obligations of an insured to third parties to pay compensatory damages. In context, it states: ". . . that portion of the **loss** which the **Insured** will become legally obligated to pay as compensatory damages . . . ." (Doc. 270-1 at 4). It is clear from this use of the term that "loss" refers to losses as between the insured and third parties, not a settlement of payments between the insured and the insurer.

(*Id.*) (emphasis in original). It is therefore a settled question that Lexington is entitled to offsets under the terms of the Lexington Excess Policy.

- 2 -

C.     **Subcontractor Payments**

The parties dispute the application of several subcontractor payments as offsets against the judgment. As a preliminary issue, the Court notes that although Silverbell in post-trial briefing disputed whether any offsets other than the Evanston payment were available to Lexington, at trial, the parties agreed that some portion of the subcontractor payments would offset the final judgment, although the amount is still at issue.[1] The subcontractor payments still at issue are those by Labrum Landscape ("Labrum"), Structural I, and the remaining subcontractors listed in the Scott Homes judgment.[2]

1.     **Labrum Landscape**

Lexington argues that the damages of $234,342 apportioned to Labrum in the Scott Homes judgment should be offset against the judgment. (Ex. 161; Doc. 470 at 8). Lexington asserts that as Labrum was dismissed before the Scott Homes judgment was entered, Lexington is not legally obligated to pay the amount allocated to Labrum. (Doc. 470 at 8). Silverbell contends that Labrum was dismissed because Silverbell's claims were time barred and Scott Homes' tender of defense was insufficient, rather than as a ruling on the merits. (Doc. 478 at 3–4). As Scott Homes was responsible for all work done by subcontractors, damages were allocated to Labrum in the judgment even though it had been dismissed as a party. (Doc. 478 at 4).

The Court is persuaded that Labrum's procedural dismissal did not excuse Scott Homes from liability for Labrum's work, thereby obligating Lexington to cover the

---

[1] Additionally, Silverbell agreed that the question of whether offsets should be applied did not need to go to the jury. Silverbell stated that "[w]e already concede that the amount of subcontractor settlement payments that are in evidence that occurred after the stipulated judgment are offsets, the 1.9 million. I don't know that we need to argue that to the jury therefore." (Doc. 453 at 26:11–14). Silverbell further stated that "[w]e agree with the proposition, Your Honor, that [the subcontractor payments] are calculated as an offset. We believe it is likely something the Court can do in light of the undisputed evidence on that point so the jury doesn't have to pull out a calculator on at least that issue." (Doc. 453 at 3:24–4:3).

[2] The remaining subcontractors are American Openings, Design Plastering, Gypsum Floor Masters, Littleton Roofing, and Paramount Iron. (Ex. 161). These subcontractors have made payments to Silverbell totaling $1,589,999.99. *See* (Doc. 470 at 5).

damages allocated to Labrum. Arizona courts have found that the dismissal of a party does not automatically excuse an insured from liability. *Cf. Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 615 (Ariz. Ct. App. 2007) (finding the determination of no fault or liability on the part of a subcontractor does not resolve the question of a contractor's liability under the insurance policy); *Sandretto v. Payson Healthcare Mgmt., Inc.*, 322 P.3d 168, 179 (Ariz. Ct. App. 2014) (holding the terms of surgeon's insurer's pre-trial settlement of patient's claims, whereby patient's claims were dismissed without prejudice and patient agreed to covenant not to execute, did not release hospital which employed surgeon from liability, since there was no judgment on the merits regarding surgeon).

Here, the Lexington Excess Policy obligates Lexington to pay "that portion of the loss which the Insured will be legally obligated to pay." (Doc. 270-1 at 4). Lexington insured Scott Homes, and Scott Homes is liable for the damages allocated to its subcontractor Labrum. (Ex. 161). That Labrum was procedurally dismissed from the suit prior to the Scott Homes judgment does not excuse Scott Home's liability for those damages.[3] Thus, the $234,342 apportioned to Labrum will not offset the judgment.

### 2. Structural I

Silverbell asserts Structural I's $325,000 payment should not be offset against the final judgment as it was received prior to entry of the Scott Homes judgment. (Doc. 472 at 10–11). The agreement with Structural I was entered on September 20, 2012. (Ex. 1117). The Scott Homes judgment was entered on March 5, 2013. (Ex. 161). Lexington responds that Scott Homes was still found liable for the amount allocated to Structural I in the judgment and not including Structural I's payment as an offset would allow Silverbell double recovery. (Doc. 479 at 11).

Lexington is correct in noting that, as a general proposition, Arizona law does not allow a plaintiff to recover duplicative damages from the same loss. (Doc. 479 at 11–14).

---

[3] Furthermore, Silverbell released Labrum on April 2, 2013 for damages caused by Labrum's work. (Doc. 478-3 at 39). The Scott Homes judgment excludes only those "defects or damages released prior to this Judgment." (Ex. 161). The Scott Homes judgment was entered on March 5, 2013. (*Id.*)

- 4 -

However, the Scott Homes judgment explicitly states that "[t]he Judgment amount does not include and is not to be offset by payments received by Plaintiff from Third-Party Defendant subcontractors in settlement of issues released via issue release." (Ex. 161). Neither party has presented evidence as to whether the damages awarded by the Scott Homes judgment included the $325,000 payment by Structural I. Without evidence to the contrary, the Court is bound by the plain language of the Scott Homes judgment. Therefore, the Court finds that Structural I's $325,000 payment will not offset the judgment in this case.

### 3. Remaining Subcontractors

Silverbell argues that the remaining $1,589,999.99 paid by the other subcontractors should be equitably allocated to satisfy Evanston's assignment of subrogation rights and Silverbell's direct claims against the subcontractors. (Doc. 472 at 11–13). Essentially, Silverbell claims that it is entitled to compensation under three categories of rights: (1) Silverbell's direct claims against the subcontractors, (2) Evanston's right to recover its insurance payment from the subcontractors, which Evanston assigned to Silverbell, and (3) Scott Homes' rights and claims against the subcontractors, which Scott Homes assigned to Silverbell. (Doc. 472 at 4). Silverbell cites only California cases in support of this theory. (Doc. 472 at 12-13). Lexington responds that Silverbell's "equitable allocation" claim is wholly unsupported by Arizona law. (Doc. 479 at 3–4). Additionally, Lexington asserts that it is under "no obligation to provide coverage for any damages arising from the alleged 'direct' claims by Silverbell against the subcontractors because Scott Homes would not be 'legally obligated' to pay for any such 'direct claims.'" (Doc. 479 at 7 n.9). Lexington further contends that the Scott Homes judgment does not differentiate between any "direct" versus "assigned" damages or claims, and it would therefore be pure speculation for the Court to make an "equitable allocation" of payments. (Doc. 479 at 7). The Court agrees.

Lexington insured Scott Homes and is required to pay those losses Scott Homes is legally obligated to pay. *See* (Doc. 270-1 at 4; Doc. 270-1 at 7). Lexington did not insure

the subcontractors. Even assuming that Silverbell has "direct claims" against the subcontractors, Scott Homes is not legally obligated to pay those damages separate from the Scott Homes judgment. Similarly, Lexington did not insure Evanston's ability to seek recovery from the subcontractors. Finally, it is undisputed that Scott Homes' liability was limited to $6,000,000. On this record, there is no evidence that Silverbell is entitled to damages over the $6,000,000 awarded in the Scott Homes judgment. Therefore, this Court will not award Silverbell more than the $6,000,000 provided for in the Scott Homes judgment.[4] The remaining $1,589,999.99 paid by the other subcontractors will offset the judgment in this case.

### D.    Pre- and Post-Judgment Interest

The parties dispute Silverbell's entitlement to prejudgment interest. (Doc. 483 at 2; Doc. 484 at 2). Neither party disputes Silverbell's entitlement to post-judgment interest under 28 U.S.C. § 1961.

"Substantive state law determines the rate of prejudgment interest in diversity actions." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1332 (9th Cir. 1995) (citing *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988)). Thus, Arizona's prejudgment interest statute provides the applicable interest rate of 10%. A.R.S. § 44-1201(A).

"Under Arizona law, prejudgment interest on a liquidated claim is a matter of right and not a matter of discretion." *Employers Mut. Cas. Co. v. McKeon*, 821 P.2d 766, 769 (Ariz. Ct. App. 1991) (citations omitted). A claim is liquidated "if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Id.* (citations omitted). A prevailing party is entitled to prejudgment interest on a liquidated claim even if interest is not specifically requested in the complaint. *Id.* (citations omitted). Furthermore, "the fact that [the insurer] disputed the issue of *coverage* does not affect the certainty of [the plaintiff's] *damages*." *Precision*

---

[4] Because of the language of the Scott Homes judgment, as indicated above, the Court finds no evidence that the Structural I payment is in excess of this $6,000,000 limitation.

- 6 -

1  *Heavy Haul, Inc. v. Trail King Indus., Inc.*, 228 P.3d 895, 899 (Ariz. Ct. App. 2010) (citing *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F.3d 1282, 1292 (9th Cir. 1995)). "Mere differences of opinion as to the amount due does not preclude prejudgment interest since disputes as to liability itself does not preclude interest." *Homes & Son Const. Co. v. Bolo Corp.*, 526 P.2d 1258, 1261 (Ariz. Ct. App. 1974) (citations omitted).

In Arizona, prejudgment interest generally accrues from the date of demand, not from the date of the loss. *Scottsdale Ins. Co. v. Cendejas*, 205 P.3d 1128, 1136 (Ariz. Ct. App. 2009) (citations omitted) ("Prejudgment interest on a liquidated claim accrues from the date of demand of a sum certain."). The Arizona Court of Appeals held that interest accrues only from the date of the court's order approving a *Damron/Morris* agreement. *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 178 P.3d 485, 497 (Ariz. Ct. App. 2008). The trial court has discretion to determine when prejudgment interest begins. *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 140 (Ariz. Ct. App. 1986).

Here, Silverbell effectively made a specific, exact demand of Lexington upon entry of the Scott Homes judgment on March 5, 2013. On that date, the state court entered a judgment of $6,000,000 in damages against Scott Homes in favor of Silverbell. (Ex. 161). The Scott Homes judgment supplied Lexington with sufficient information and supporting data to enable it to ascertain the amount owed "without reliance upon opinion or discretion." *Employers Mut. Cas.*, 821 P.2d at 769. Therefore, Silverbell is entitled to prejudgment interest on the $5,000,000 Scott Homes judgment at the rate of 10% per annum from March 5, 2013. As prejudgment interest in Arizona is not compounded and is calculated annually, the prejudgment interest in this case shall be calculated based on the average remaining daily balance for the 365 day period beginning on March 5 and ending on March 4, annually. Each offset granted by this judgment shall reduce the principal from the original $5,000,000 as of the date of the offset payment.

## II. Conclusion

For the foregoing reasons,

**IT IS ORDERED** awarding Silverbell $3,410,000.01 dollars. The amount of this judgment shall be subject to prejudgment interest at the rate of 10% per annum, calculated on the daily average of the remaining principal after deducting each offset on the date of payment as specified above. The amount of this judgment shall be subject to post-judgment interest at the rate of 0.23% per annum. Judgment to follow.

Dated this 30th day of October, 2015.

James A. Teilborg
Senior United States District Judge