WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lexington Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Scott Homes Multifamily Incorporated, et al.,<br><br>Defendants. | No. CV-12-02119-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Lexington Insurance Company ("Lexington")'s Renewed Motion for Judment [sic] as a Matter of Law, Motion for a New Trial, Motion to Alter or Amend the Judgment, and/or Motion for Relief from the Judgment. (Doc. 499). Defendant/Counterclaimant Silverbell 290 Limited Partnership and Defendant Scott Homes Multifamily, Inc. ("Silverbell") filed a response, (Doc. 512), and Lexington replied, (Doc. 513). The Court held a jury trial in this matter, and the jury returned a verdict in favor of Silverbell. (Doc. 463). The Court entered Judgment in favor of Silverbell in the amount of $3,410,000.01 in addition to pre- and post-judgment interest. (Doc. 486). The Court now rules on Lexington's motions.

**I.    Renewed Motion for Judgment as a Matter of Law**

**A.    Legal Standard**

Federal Rule of Civil Procedure ("Rule") 50 permits a court to grant judgment as a matter of law ("JMOL") on an issue if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ.

P. 50(a)(1). JMOL is "proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (quoting *Ostad v. Or. Health Sci. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003)). The Court must uphold the jury's verdict "if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "In making this determination, the court must not weigh the evidence, but should simply ask whether the [moving party] has presented sufficient evidence to support the jury's conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). The Court must "view the evidence in the light most favorable to the party in whose favor the jury returned a verdict and draw all reasonable inferences in [its] favor." *Lakeside-Scott*, 556 F.3d at 802.

### B.     Analysis

In support of its Renewed Motion for Judgment as a Matter of Law, Lexington contends that Silverbell did not prove (1) more than $1,000,000 of "property damage" as defined by the underlying Evanston Policy, (2) that any "property damage" actually occurred during the policy period, and (3) that Scott Homes complied with the Evanston Policy's independent contractors conditional exclusion. (Doc. 499 at 2–8).

#### 1.     Amount of "Property Damage"

Lexington first argues that Silverbell did not provide sufficient evidence to show that "property damage" exceeded $1 million. (*Id.* at 2–3). In this regard, Silverbell's expert opined that Silverbell suffered over $7 million in property and resultant damages to tangible property in addition to loss-of-use damages of over $1 million. *See* (9/2/15 Tr. at 26–44). Silverbell also introduced into evidence volumes of photographs depicting property damage. *See e.g.*, (Tr. Exs. 1029–30). On the other hand, Lexington's expert testified that Scott Homes suffered less than $1 million in covered property damages. *See* (9/9/15 Tr. at 1684, 1174–75). While Lexington's view could be construed as one possible interpretation of the evidence, the Court finds that the jury's interpretation is a

- 2 -

reasonable one. Even assuming the Court considered Lexington's view of the evidence to be more reasonable, it is not for the Court to "substitute [its] view of the evidence for that of the jury." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).

### 2. Time Period of "Property Damage"

Lexington next contends that Silverbell presented no evidence showing that the millions of dollars in "property damages" occurred during the Lexington Policy period. (Doc. 499 at 3–6). "Property damage" was defined by the Evanston Policy as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. 270-2 at 53). The Court previously held that in order to recover, Silverbell needed to show that "Scott Homes suffered damages exceeding $1 million for property damages caused by construction defects." (Doc. 323 at 23). The Court finds that the jury's verdict in this regard was "supported by substantial evidence," *Pavao*, 307 F.3d at 918, and thus, will not overturn the verdict.

### 3. Compliance with the Evanston Policy

Lexington finally argues that the evidence presented by Silverbell did not show that Scott Homes adequately complied with the Evanston Policy's independent contractors conditional exclusion. (Doc. 499 at 6–8). The Court finds that Silverbell presented substantial evidence at trial for the jury to determine whether Silverbell proved Scott Homes' compliance with the conditional exclusion. *See* (Tr. Exs. 1002, 1004–11; 8/31/15 Tr. at 928–30, 933–35). Consequently, the Court will not upset the jury's verdict.

### 4. Conclusion

In sum, the Court finds that substantial evidence supported the jury's verdict and thus, Lexington's Renewed Motion for Judgment as a Matter of Law will be denied.

**II.   Motion for New Trial**

   **A.   Legal Standard**

Rule 59(a) states that "after a jury trial," a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Reasons for granting a new trial historically include a verdict that, in the judge's view, is against the clear weight of the evidence (or constitutes a miscarriage of justice), *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007), prejudicial evidentiary rulings, *Dorn v. Burlington N. Santa Fe R.R.*, 397 F.3d 1183, 1189 (9th Cir. 2005), and erroneous or inadequate jury instructions, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). Lexington maintains that all three of these reasons warrant a new trial in this case. (Doc. 499 at 8–15).

   **B.   Analysis**

The Court will review each of Lexington's contentions in turn.

      **1.   Contrary to Clear Weight of Evidence**

Lexington first contends that the jury's verdict is contrary to the clear weight of the evidence and recycles the arguments presented with its renewed JMOL. (Doc. 499 at 8). As explained above, the Court finds that the jury's verdict was based on substantial evidence introduced during the multi-week trial and thus will not disturb the verdict.

      **2.   Evidentiary Errors**

Lexington also asserts that the jury's verdict was the product of two evidentiary errors, namely, that the Court should have excluded the testimony of Dr. Albert DeBonis and Thomas Cologna. (Doc. 499 at 7–9). As to Dr. Debonis, Lexington argues that the jury was not entitled to rely on his testimony because he made opinions as to "when" the wood decay began at the property but did not set forth sufficient methodologies explaining how he arrived at his conclusions. (Doc. 499 at 5). There is no dispute that Dr. Debonis is a qualified wood scientist, and the Court finds that his opinions were the result of appropriate methodologies and principles. Thus, the Court did not err by permitting Dr. Debonis to offer opinions as to the timing of the wood decay.

Regarding Mr. Cologna, Lexington insists that his testimony about loss-of-use damages should have been excluded because the parties purportedly entered into a mutual waiver of consequential damages. (Doc. 499 at 9). It is undisputed, however, that the Superior Court of Arizona resolved the applicability of the consequential damages waiver before approving the *Damron* agreement. Thus, yet again, Lexington misinterprets Arizona law which holds that an insurer who does not defend an insured may not challenge the reasonableness of a stipulated judgment entered into by its insured. *See Damron v. Sledge*, 460 P.2d 997, 1001 (Ariz. 1969). Although Lexington could litigate whether the insured was in fact covered under its policy and whether the policy carved out coverage for loss-of-use damages, Lexington was not permitted to re-litigate the viability of Silverbell's loss-of-use claim against its insured, Scott Homes. *See Quihuis v. State Farm Mut. Auto. Ins.*, 334 P.2d 719, 729–30 (Ariz. 2014); *Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 22 n.3 (Ariz. 2004). This is an issue Lexington "should have considered before refusing to defend." *Damron*, 460 P.2d at 1001.

### 3. Jury Instructions and Verdict Form

As its third and final argument for a new trial, Lexington maintains that the jury instructions and verdict form were inadequate. (Doc. 499 at 10–15). After reviewing Lexington's arguments and the jury instructions as a whole, the Court is convinced that the instructions "fairly and adequately cover[ed] the issues presented, correctly state[d] the law, and [were] not misleading." *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). The specific instruction to which Lexington objects is a correct recitation of Arizona law, *see Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 546 (Ariz. Ct. App. 2007) ("Faulty construction may constitute a 'general harmful condition.'"), and the Court "must assume that the jury followed the court's instructions." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604 (1985). Indeed, the Court cannot speculate as to how the jury reached its verdict so long as the verdict is supported by the evidence. *See Dunn v. United States*, 284 U.S. 390, 394 (1932) ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts

1  cannot be upset by speculation or inquiry into such matters."). Here, the Court finds that
2  the verdict is supported by the evidence and will not speculate as to how the jury reached
3  its verdict.

4  Furthermore, Lexington's argument that a new trial is warranted because the jury
5  was not instructed that it had to differentiate between "property damage" and "uncovered
6  damages," *see* (Doc. 499 at 12), is shamelessly false. The Court unambiguously
7  instructed the jury that:

> To prove coverage under the Lexington Policy for the claims against Scott Homes, consistent with the applicable terms of the policy, Silverbell must prove by a preponderance of the evidence *both* of the following elements:
>
> 1. There was *property damage* at the Springs at Silverbell Apartments *that is covered under the Lexington Policy*; and
>
> 2. The amount of *covered property damage* exceeded one million dollars.

(Doc. 462 at 18) (emphasis added). Similarly, the jury verdict form read:

> We the jury find, upon our oaths, as follows:
>
> Has Silverbell 290 Limited Partnership proved by a preponderance of the evidence that Scott Homes Multifamily Inc. was liable for *covered property damage* exceeding $1 million as defined in the jury instructions?

(Doc. 463 at 2) (emphasis added). Whether intentional or not, how Lexington misreads the jury instructions and verdict form in a manner that does not require Silverbell to prove that covered property damages exceeded $1 million is beyond the Court's imagination.

**III.   Motion to Alter or Amend the Judgment**

**A.    Legal Standard**

"Rule 59(e) amendments are appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003) (internal quotation marks omitted). A court may also grant relief from the judgment based on a mistake or any other reasons

that justifies relief. Fed. R. Civ. P. 60(b)(1).

**B.     Analysis**

Lexington argues that the Court should alter or amend the Judgment by (1) offsetting sub-contractor Structural I's $325,000 fault share and (2) amending or vacating the pre-judgment interest award. (Doc. 499 at 15–18).

As to the requested offset of Structural I's fault share, the Court already held that it "is bound by the plain language of the Scott Homes judgment," (Doc. 485 at 5), which stated "[t]he Judgment amount does not include an is not to be offset by payments received by Plaintiff from Third-Party Defendant subcontractors in settlement of issues released via issue release," (Ex. 161). Lexington has not presented "newly discovered evidence," shown that the Court committed "clear error," or explained an "intervening change in controlling law." *Dixon*, 336 F.3d at 1022. Thus, the Court will not modify its ruling in this regard.

In respect to pre-judgment interest, the Court is convinced that Arizona Revised Statute § 44-1201(A) applies to the pre-judgment interest award in this case. Lexington had a contractual "obligation" to defend its insured, and the damages amount became liquidated when the Superior Court of Arizona approved the *Damron* agreement. *See Pueblo Sante Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 178 P.3d 485, 497 (Ariz. Ct. App. 2008) (holding that interest accrues from the date the court approves a *Damron/Morris* agreement). Furthermore, the "offsets" to which Lexington refers did not manifest through the Court's "opinion or discretion," but were subcontractor payments that reduced the full liquidated damages amount. Accordingly, the Judgment was "based on a written agreement evidencing a loan, indebtedness or obligation," Ariz. Rev. Stat. § 44-1201(A), and was for a liquidated amount, *see Precision Heavy Haul, Inc. v. Trail King Indus., Inc.*, 228 P.3d 895, 899 (Ariz. Ct. App. 2010) ("[T]he fact that the insurer dispute[s] the issue of *coverage* does not affect the certainty of [an insured's] *damages*." (quotation omitted)).

## IV. Conclusion

For the reasons set forth above,

**IT IS ORDERED** that Lexington's Renewed Motion for Judment [sic] as a Matter of Law, Motion for a New Trial, Motion to Alter or Amend the Judgment, and/or Motion for Relief from the Judgment (Doc. 499) is **DENIED**.

Dated this 31st day of March, 2016.

*James A. Teilborg*
Senior United States District Judge