**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Lexington Insurance Company, a Delaware corporation,

        Plaintiff/
        Counterdefendant,

v.

Scott Homes Multifamily Inc., an Arizona corporation; and Silverbell 290 Limited Partnership, an Arizona limited partnership,

        Defendants/
        Counterclaimants.

No. CV-12-02119-PHX-JAT

**ORDER**

      Pending before the Court is Defendant/Counterclaimant Silverbell 290 Limited Partnership's ("Silverbell") and Defendant Scott Homes Multifamily, Inc.'s ("Scott Homes") (collectively, "Defendants") Motion for Attorneys' Fees, (Doc. 494). Plaintiff/Counterdefendant Lexington Insurance Company ("Lexington") has filed a brief in opposition to Defendants' Motion for Attorneys' Fees, (Doc. 503). The Court now rules on the motion.

## I.     Background

      Assuming familiarity with the factual and procedural history of this action, the Court will recount only those aspects of this litigation that are relevant to the pending issue of attorneys' fees and costs.

      On October 8, 2012, Lexington filed a Complaint for Declaratory Judgment seeking "[a] judicial declaration that there is no coverage under the Lexington Excess

Policy for the Stipulated Judgment" entered into by Scott Homes and Silverbell in the underlying construction defect lawsuit. (Doc. 1 at 34). Lexington also sought "[a] judicial declaration that [it] owes no current or past duty to defend, indemnify, or reimburse Scott Homes in any amount for any claims in connection with the underlying lawsuit or Settlement Agreement." (*Id.*). Silverbell filed an Answer on October 31, 2012 and asserted counterclaims for breach of contract, bad faith, and punitive damages. (Doc. 10). In its Counterclaim, Silverbell sought $6,000,000.00 in damages for its breach of contract claim arising from the Stipulated Judgment in the underlying construction defect lawsuit, damages for bad faith, and punitive damages in the amount of $5,000,000.00 or more. (*Id.* at 45–46). Although Scott Homes filed an Answer on December 17, 2012, Scott Homes did not assert any counterclaims as it had previously "assigned the relevant interest in the Lexington insurance policy to Silverbell." (Doc. 25 at 5). As a result, Scott Homes contended it was "not a proper party to this lawsuit." (*Id.*). On June 12, 2013, Lexington filed an Answer to Silverbell's Counterclaim in which Lexington denied liability. (Doc. 52). On April 25, 2014, Lexington filed a First Amended Complaint ("FAC"); (Doc. 270).[1]

On May 16, 2014, Lexington and Defendants filed cross-motions for summary judgment. (Docs. 273, 281). In ruling on these motions, the Court found for Defendants on certain coverage issues, but determined that Silverbell was not entitled to punitive damages. (Doc. 323 at 49–50). Additionally, the Court held that fact issues remained as to Silverbell's bad faith counterclaim, as well as several coverage issues, requiring resolution by trial. (*Id.*). On August 20, 2015, the parties stipulated to the dismissal of Silverbell's bad faith counterclaim and agreed that neither party would "be entitled to attorneys' fees or costs in connection" with this bad faith claim. (Doc. 404 at 2).

---

[1] Lexington's FAC, (Doc. 270), not its original Complaint, (Doc. 1), is operative. Lexington requested leave to amend its Complaint "for the sole purpose of correcting a drafting error identifying the incorrect policy at issue." (Doc 149 at 2). Defendants did not "expressly disagree with the substantive change requested by [Lexington], nor contend a different policy [was] at issue." (Doc. 269 at 1). Accordingly, the Court granted Lexington's Motion for Leave to File First Amended Complaint. (*Id.* at 2).

1    At the time of trial, Counts II–XI of Lexington's FAC remained, as well as Count

2    I of Silverbell's Counterclaim regarding coverage.   (Doc. 486 at 1). All of the other

3    claims in Lexington's FAC and Silverbell's counterclaims for bad faith and punitive

4    damages were dismissed prior to trial. (*Id.*). At trial, the jury found that Silverbell

5    "proved by a preponderance of the evidence that Scott Homes Multifamily Inc. was liable

6    for covered property damage exceeding $1 million." (Doc. 463 at 2). Based on this

7    verdict, the Court entered judgment in favor of Defendants on "all remaining Counts in

8    the Complaint and Counterclaim" and awarded Silverbell $3,410,000.01, subject to

9    prejudgment and post-judgment interest. (Doc. 486 at 1).

10    Defendants now seek an award of attorneys' fees and taxable costs against

11    Lexington   totaling   $1,558,099.04,   calculated   under   Defendants'   contingent   fee

12    agreement. (Doc. 494 at 6). Alternatively, Defendants seek an award in the amount of

13    $1,015,650.00 "based upon services performed and reasonable hourly rates for those

14    services." (*Id.*). Defendants' request for attorneys' fees is based upon Arizona Revised

15    Statute Sections 12-341.01(A) and (B), (Doc. 494 at 9), which provide, in relevant part:

16    A.    In any contested action arising out of a contract,
      express or implied, the court may award the successful party
17    reasonable attorney fees. . . . This section shall not be
      construed as altering, prohibiting or restricting present or
18    future contracts or statutes that may provide for attorney fees.

19    B.    The award of reasonable attorney fees pursuant to this
      section should be made to mitigate the burden of the expense
20    of litigation to establish a just claim or a just defense. It need
      not equal or relate to the attorney fees actually paid or
21    contracted, but the award may not exceed the amount paid or
      agreed to be paid.
22

23    A.R.S. § 12-341.01(A–B).

24    Lexington contends that Defendants are not entitled to reasonable attorneys' fees

25    on the grounds that Defendants are not the successful or prevailing party. (Doc. 503 at 2).

26    In the event the Court decides to award attorneys' fees to Defendants, Lexington

27    alternatively asks that the Court award "a reasonable amount of attorneys' fees actually

28    expended only on the successful aspects of the case" rather than calculate an award under

Defendants' contingent fee agreement. (*Id.*). Additionally, if the Court is inclined to make an award to Defendants, Lexington requests that the Court "make a further equitable deduction of fifty percent (50%) to account for activities related to the meritless counterclaims and the defense of Scott Homes that were lumped into other activities." (*Id.*). Accordingly, Lexington argues that "any award of reasonable attorneys' fees to Defendants for their work on successful claims should be no more than $428,467.53." (*Id.*).

## II.    Legal Standard

"[I]n federal cases where the controlling substantive law is state law, such as in diversity cases or as to claims where the court is exercising supplemental jurisdiction, attorneys' fees can be awarded under state law." *Poehler v. Fenwick*, No. 2: CV-15-1161-PHX-JWS, 2016 WL 1428095, at *2 (D. Ariz. Apr. 12, 2016) (citation omitted). Under Arizona state law, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Therefore, to award attorneys' fees under this statute, the Court must find that this action arises out of a contract, that Defendants are the "successful" or prevailing party, that an award of attorneys' fees is appropriate, and that the requested fees are reasonable.

### A.    Whether the Claim Arises Out of a Contract

In determining whether a claim arises out of a contract, the court considers the "nature of the action and the surrounding circumstances." *Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986).  An action arises out of a contract under A.R.S. § 12-341.01(A) if the action could not exist "but for" the contract, meaning that the presence of a contract is a legal element of the action. *See Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1141 (Ariz. 1982); *see also Barmat v. John & Jane Doe Partners A–D*, 747 P.2d 1218, 1222 (Ariz. 1987) ("Where . . . the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist 'but for' the contract, then breach of either express covenants or those necessarily implied from them sounds in

contract."). Consequently, A.R.S. § 12-341.01 does not apply if the "contract is only a factual predicate to the action but not the essential basis of it." *Kennedy v. Linda Brock Auto. Plaza, Inc.*, 856 P.2d 1201, 1203 (Ariz. Ct. App. 1993). Nor does "[t]he mere reference to a contract in a complaint . . . make the action one 'arising out of contract.'" *Dooley v. O'Brien*, 244 P.3d 586, 591 (Ariz. Ct. App. 2010).

### B.      "Successful" Party

Under Arizona law, "[t]he trial court has substantial discretion to determine who is a 'successful party'" when determining an award of attorneys' fees under A.R.S. § 12-341.01. *Fulton Homes Corp. v. BBP Concrete*, 155 P.3d 1090, 1096 (Ariz. Ct. App. 2007) (citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 733 P.2d 652, 664 (Ariz. Ct. App. 1986)). "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 214 P.3d 415, 422 (Ariz. Ct. App. 2009) (quoting *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1994)).

Further, "'[a]n adjudication on the merits is not a prerequisite to recovering attorneys' fees under [A.R.S. § 12-341.01].'" *Med. Protective Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013) (quoting *Fulton Homes Corp.*, 155 P.3d at 1096). Accordingly, "successful parties" are "not limited to those who have a favorable final judgment at the conclusion of the" action. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1048 (Ariz. 1985). "Rather, a party may be successful without recovering 'the full measure of the relief it requests.'" *Med. Protective Co.*, 740 F.3d at 1283 (quoting *Sanborn*, 874 P.2d at 987). In like manner, "[n]either does the fact that the amount of the claim is set off or reduced by counterclaim mean that the plaintiff was not the successful party." *Ocean W. Contractors, Inc. v. Halec Const. Co.*, 600 P.2d 1102, 1105 (Ariz. 1979) (citations omitted). For example, a "party who is awarded a money judgment in a lawsuit is not always the successful or prevailing party," although an "award of money is . . . an important item to consider when deciding who, in fact, did prevail." *Id.*

Furthermore, a party "need not 'prevail on the merits of the underlying claims' in order to be deemed a successful party under Section 12-341.01." *Med. Protective Co.*, 740 F.3d at 1283 (quoting *Mark Lighting Fixture Co. v. Gen. Elec. Supply Co.*, 745 P.2d 123, 128 (Ariz. Ct. App. 1986)).

"To determine whether a party is successful under Section 12-341.01, a court should consider 'the totality of the circumstances and the relative success of the litigants.'" *Id.* (quoting *McAlister v. Citibank*, 829 P.2d 1253, 1262 (Ariz. Ct. App. 1992)). Where a case involves "various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner." *Ayala v. Olaiz*, 776 P.2d 807, 809 (Ariz. Ct. App. 1989). In determining who was the prevailing party in such "a case involving multiple claims and varied success, the trial court may apply a 'percentage of success' or a 'totality of the litigation' test." *Berry v. 352 E. Va., L.L.C.*, 261 P.3d 784, 788–89 (Ariz. Ct. App. 2011) (quoting *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 25 (Ariz. Ct. App. 1990)). Other Arizona courts have also applied a "net judgment" test to determine the prevailing party in situations where both parties are awarded judgments. *Vortex Corp. v. Denkewicz*, 334 P.3d 734, 745 (Ariz. Ct. App. 2014); *see also Am. Power Prods., Inc. v. CSK Auto, Inc.*, No. 1: CA-CV-12-0855, 2016 WL 2930686, at *2 n.2 (Ariz. Ct. App. May 19, 2016) (indicating that the bright-line net judgment test may best be applied in "moderately simple" cases with claims and counterclaims "for merely monetary damages" that are "not so complex").

## C. Discretion to Award Attorneys' Fees

If the court finds that a party is the "successful party" as envisioned in A.R.S. § 12-341.01, the court may then exercise its discretion on whether to award reasonable attorneys' fees. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Nevertheless, "there is no presumption that a successful party should be awarded attorney fees under § 12-341.01." *Motzer v. Escalante*, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011); *see also Manicom v. CitiMortgage, Inc.*, 336 P.3d 1274, 1283 (Ariz. Ct. App. 2014) (holding that an award of attorneys' fees under A.R.S. § 12-341.01(A) "is

permissive" and "not mandatory").

In determining whether to exercise its discretion to award attorneys' fees under § 12-341.01(A), the Arizona Supreme Court concluded in *Associated Indemnity* that a court may consider, among other factors, the following:

> (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits.

*Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319 (9th Cir. 1997) (citing *Associated Indem. Corp.*, 694 P.2d at 1184).

Of these *Associated Indemnity* factors, "[n]o single factor can be determinative and the court is to weigh all of the factors in exercising its discretion." *Am. Const. Corp. v. Phila. Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1107 (D. Ariz. 2009) (citing *Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. Ct. App. 1987)). However, "[t]he weight given to any one factor is within the court's discretion." *Moedt v. Gen. Motors Corp.*, 60 P.3d 240, 245 (Ariz. Ct. App. 2002). Finally, because "[a]n award of attorney's fees under A.R.S. § 12-341.01 is discretionary with the trial court, . . . if there is any reasonable basis for the exercise of such discretion, its judgment will not be disturbed." *Schwartz*, 800 P.2d at 25 (citing *Associated Indem. Corp.*, 694 P.2d at 1184–85).

## D.     "Reasonable" Attorneys' Fees

Finally, after concluding that awarding attorneys' fees is appropriate under the factors laid out in *Associated Indemnity*, the court must then decide whether the requested fees are reasonable. *Manone v. Farm Bureau Prop. & Cas. Co.*, No. 3:CV-15-8003-PCT-JAT, 2016 WL 1059539, at *3 (D. Ariz. Mar. 17, 2016). To determine whether the requested attorneys' fees are reasonable, "the Court looks to whether the hourly rate is reasonable and whether the hours expended on the case are reasonable." *Maguire v. Coltrell*, No. 2:CV-14-1255-PHX-DGC, 2015 WL 3999188, at *3 (D. Ariz. July 1, 2015) (citing *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931–32 (Ariz. Ct. App. 1983)).

Reasonability is generally analyzed under the "lodestar method," which has been adopted as "the centerpiece of attorney's fee awards." *Leavey v. UNUM/Provident Corp.*, No. 2: CV-02-2281-PHX-SMM, 2006 WL 1515999, at *23 (D. Ariz. May 26, 2006) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). "The lodestar method of calculating reasonable attorneys' fees is a two-step process whereby a court multiplies 'the number of hours reasonably expended by a reasonable hourly rate' and then determines if any of the identified lodestar factors favor enhancing or reducing the arrived at product." *Manone*, 2016 WL 1059539, at *3 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).

Courts may also consider the thirteen factors listed in Local Rule of Civil Procedure for the District of Arizona ("Local Rule") 54.2(c)(3) when determining the reasonableness of an attorneys' fee request. *See W. All. Bank v. Jefferson*, No. 2: CV-14-0761-PHX-JWS, 2016 WL 1392077, at *1 (D. Ariz. Apr. 8, 2016). These thirteen factors include:

> (A) The time and labor required by counsel; (B) The novelty and difficulty of the questions presented; (C) The skill requisite to perform the legal service properly; (D) The preclusion of other employment by counsel because of the acceptance of the action; (E) The customary fee charged in matters of the type involved; (F) Whether the fee contracted between the attorney and the client is fixed or contingent; (G) Any time limitations imposed by the client or the circumstances; (H) The amount of money, or the value of the rights, involved, and the results obtained; (I) The experience, ability and reputation of counsel; (J) The 'undesirability' of the case; (K) The nature and length of the professional relationship between the attorney and the client; (L) Awards in similar actions; and (M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3).

Further, "[o]nce a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1285–86 (Ariz. Ct. App. 2007). However, "[i]f that party fails to make such a showing of

unreasonableness, the prevailing party is entitled to full payment of the fees." *Geller v. Lesk*, 285 P.3d 972, 976 (Ariz. Ct. App. 2012) (citing *McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 165 P.3d 667, 672 (Ariz. Ct. App. 2007)). On the other hand, should "the party opposing the award show[] that the otherwise prima facie reasonable fee request is excessive, the court has discretion to reduce the fees to a reasonable level." *Id.*

The Court "has broad discretion in fixing the amount of attorneys' fees." *Pettay v. Ins. Mktg. Servs., Inc. (W.)*, 752 P.2d 18, 21 (Ariz. Ct. App. 1987) (citing *Associated Indem. Corp.*, 694 P.2d at 1184). However, "[t]his discretion is limited only to the extent that 'such award may not exceed the amount paid or agreed to be paid.'" *Id.* (citing A.R.S. § 12-341.01(B); *Lacer v. Navajo Cty.*, 687 P.2d 400, 404 (Ariz. Ct. App. 1984)).

## III.   Analysis

### A.   Entitlement to Fees

Defendants are entitled to an award of reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A) as this suit involved a contested action arising out of a contract, Defendants were the successful party in this litigation, and the Court will exercise its discretion in awarding attorneys' fees.

#### 1.   The Claim Arises Out of a Contract

In their request for attorneys' fees under A.R.S. § 12-341.01, Defendants allege that "[t]his action, and all claims alleged herein, arose out of an express contract—the 2002 Lexington Excess Policy." (Doc. 494 at 9). The Court agrees. Defendants' Motion for Attorneys' Fees continues: "The 2002 Lexington Excess Policy contained both defense and coverage obligations imposed on Lexington and owed to its insured, Scott Homes. Scott Homes' rights under the 2002 Lexington Excess Policy were assigned to Silverbell." (*Id.*). Further, Defendants state that Lexington's coverage obligations under this contract "were triggered" when the jury "determined Scott Homes was liable for more than $1 million in 'property damage' covered under the 2002 Lexington Excess Policy." (*Id.* at 9–10).

Although Lexington contends that "Defendants do not argue that they are entitled to recover their attorneys' fees pursuant to contract," but instead "rely solely on A.R.S. § 12-341.01," (Doc. 503 at 4–5), this does not dissuade the Court from agreeing with Defendants' contention that this action arose out of an express contract. In support of its argument Lexington cites *Sanders v. Boyer*, which states, "[u]nder Arizona law the long-standing general rule has been that attorney's fees are not allowed except where expressly provided for by either statute or contract." 613 P.2d 1291, 1297 (Ariz. Ct. App. 1980). However, it is clear to the Court that A.R.S. § 12-341.01—a *statute* expressly providing that a court may award attorney fees "[i]n any contested action arising out of a *contract*," A.R.S. § 12-341.01(A) (emphasis added)—meets the mandate of *Sanders v. Boyer*.

Further, "[w]hen the contract in question is central to the issues of the case, it will suffice as a basis for a fee award." *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836–37 (9th Cir. 2001). Here, the Lexington Excess Policy was clearly central to the issues of this case. As Defendants pointed out in their Motion for Attorneys' Fees, (Doc. 494 at 9), the Court even previously determined that Lexington had a duty to defend Scott Homes under the Lexington Excess Policy and Lexington's refusal to do so "was a material breach of the Lexington Excess Policy." (Doc. 323 at 37). As a result, the Court finds that this action and all claims alleged herein arose out of the 2002 Lexington Excess Policy, an express contract.

### 2.    Defendants are the "Successful" Party

In their Motion for Attorneys' Fees, Defendants assert that "Silverbell and Scott Homes are the prevailing parties in this litigation." (Doc. 494 at 6). In support of this argument, Defendants state, "[a] judgment was entered in favor of Silverbell and Scott Homes, and against Lexington Insurance Company [] on October 30, 2015." (*Id.*). With damages and pre-judgment interest included, "the total amount of the judgment is $4,331,507.67." (*Id.*). Defendants maintain that "Silverbell prevailed on both contractual issues relating to Lexington's defense and coverage obligations" and "on all of the Counts for Declaratory Relief alleged by Lexington regarding the 2002 Lexington Excess

1    Policy." (*Id.* at 10).

2        Lexington, however, states that "Defendants presume, without any analysis, that

3    they are the 'successful parties' simply because they received a judgment following

4    trial." (Doc. 503 at 5). Rather, Lexington insists that Defendants do "not meet [the]

5    threshold requirement for an attorneys' fees award" because "under either a 'percentage

6    of success' or a 'totality of the litigation' test, neither party is the successful party in this

7    case." (*Id.* at 7).[2] Lexington does concede that "Silverbell received a judgment on certain

8    contractual claims at trial." (*Id.* at 6).  However, Lexington states that it "prevailed on a

9    contractual claim regarding offsets in the parties' post-trial motions" where it "received

10   $2,589,999.99 in offsets, which allowed Silverbell to only recover approximately fifty-

11   seven percent (57%) of its requested contractual damages of $6 million." (*Id.*).[3] Further,

12   Lexington asserts that "Defendants were unsuccessful on two of the primary issues in this

13   case: Silverbell's extracontractual claims for bad faith and punitive damages." (*Id.* at 2).

14   Specifically, Lexington claims that it "prevailed on the merits on Silverbell's $15 million

15   punitive damages counterclaim, and obtained a dismissal of the bad faith counterclaim

16   upon the parties' stipulation[.]" (*Id.* at 6).

17       Despite Lexington's contentions that neither party prevailed in this action, the

18

19       [2] Although litigation is unquestionably adversarial, it is possible for a court to find

20   that neither party in an action is the "prevailing" party when considering whether to
     award attorneys' fees under A.R.S. § 12-341.01. *See Med. Protective Co.*, 740 F.3d at

21   1283 n.3 ("If there is 'no clear successful party,' such as when the jury returns a partial
     verdict, it may be proper for the court to find that there was no successful party.") (citing

22   *Bank One, Ariz. v. Rouse*, 887 P.2d 566, 571 (Ariz. Ct. App. 1994)); *see also Kaman
     Aerospace v. Ariz. Bd. of Regents*, 171 P.3d 599, 609 (Ariz. Ct. App. 2007) (holding that

23   courts may properly refuse to award attorneys' fees to either party where "neither party
     prevailed on its claim at trial"). However, this is not the case in the present suit, as there

24   is a clear successful party and one party has prevailed on its claims at trial.

25       [3] In its Brief in Opposition to Defendants' Motion for Attorneys' Fees, Lexington
     states, "[u]nder the Court's ruling, Lexington received all but two of its requested offsets"

26   totaling $2,589,999.99. (Doc. 503 at 6). However, Lexington did not receive the
     $234,342.00 offset it requested for Labrum Landscape (Doc. 485 at 3–4), the

27   $325,000.00 offset it sought for Structural I's payment (*id.* at 4–5), nor an offset for
     prejudgment interest (*id.* at 6–7). Lexington, in fact, only received *one* offset in the
     amount of $1,589,999.99 for the amount paid by the other subcontractors. (*Id.*). The

28   parties also "stipulated that the $1,000,000 Evanston payment should be deducted from
     the Scott Homes judgment." (*Id.* at 2).

Court has "substantial discretion" to ascertain which party, if any, was successful. *Fulton Homes Corp.*, 155 P.3d at 1096 (citing *Pioneer Roofing Co.*, 733 P.2d at 664). As each party in this case prevailed on some claims, the Court concludes that a "totality of the litigation" test will most fairly determine the relative success of the parties. *See generally Schwartz*, 800 P.2d at 25.[4] Under a "totality of the litigation" test, "the Court reviews the multiple claims and whether the parties succeeded on these claims to determine which party is the successful party." *Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1239 (D. Ariz. 2014) (citing *Berry*, 261 P.3d at 788–89). "Only when a defendant's setoffs or counterclaims exceed the amount recovered by the plaintiff is the court barred from finding that the plaintiff was the prevailing party." *Am. Power Prods., Inc.*, 2016 WL 2930686, at *2 n.3; *see Sanborn*, 874 P.2d at 987.

After reviewing each of the multiple claims in this case under the "totality of the litigation" test, the Court finds that Defendants were the successful party. Upon the parties' cross-motions for summary judgment, the Court held that Silverbell was entitled to judgment on Counts I, XII, XIII, XIV, XV, and XVI of Lexington's FAC. (Doc. 323 at

---

[4] Both the Ninth Circuit and the Arizona Court of Appeals have confirmed that "[c]ourts may determine the relative success of the parties by using a 'percentage of success factor' test, *or* by looking at the 'totality of the litigation.'" *Med. Protective Co.*, 740 F.3d at 1283 (emphasis added); *see also Schwartz*, 800 P.2d at 25. Consequently, the Court has discretion to choose which test to apply.

In the alternative, some Arizona courts have employed the "net judgment rule" when determining which party is successful under A.R.S. § 12-341.01. *See Am. Power Prods., Inc.*, 2016 WL 2930686, at *2. Under the net judgment approach, the prevailing party "is the party that, when both sides are awarded judgments, is awarded a greater amount than the other party." *Vortex Corp.*, 334 P.3d at 745. "Thus a party will be 'successful' if he obtains judgment for an amount in excess of the setoff or counterclaim allowed." *Ocean W. Contractors, Inc.*, 600 P.2d at 1105.

Here, Defendants were awarded a final judgment in their favor on every claim which remained for trial, (Doc. 486), while Lexington prevailed on Defendants' punitive damages claim, (Doc. 323 at 50). However, the competing claims, counterclaims and setoffs were not all tried together. If the Court were to apply the "net judgment rule," the value of Defendants' counterclaim, for which Defendants were awarded judgment totaling $4,331,507.67, far exceeds the amount recovered by Lexington; Lexington did not receive judgment on any claim remaining for trial. Further, the value of Defendants' judgment even exceeds the $2,589,999.99 Lexington claims to have received in offsets as a result of post-trial motions. (Doc. 485); *see* n.3. Accordingly, because Defendants' counterclaims exceed the amount recovered by Lexington, Defendants are the prevailing party under the "net judgment rule."

49–50).[5] Accordingly, these claims were dismissed. (*Id.*). As to Silverbell's Counterclaim, the Court held that Count I (duty to defend and coverage) and Count II (bad faith) remained issues for trial. (*Id.* at 50). Despite these victories for Defendants, however, the Court determined on summary judgment that "Silverbell is not entitled to punitive damages." (*Id.*). Lexington was not awarded summary judgment on any other claims, but the Court did hold that Counts II–XI of Lexington's FAC were "coverage issues to be litigated at trial." (*Id.* at 49).[6]

A few months later, upon stipulation of the parties, (Doc. 404), the Court dismissed with prejudice Count II of Silverbell's Counterclaim for insurance bad faith, (Doc. 406). While Defendants claim that "[t]his was a tactical trial decision by Silverbell and not an acknowledgement of reasonableness by Lexington in its claims handling," (Doc. 494 at 14), Lexington contends this dismissal occurred "shortly after [it] prevailed on a critical motion in limine that severely undercut Silverbell's bad faith counterclaim," (Doc. 503 at 6). Lexington even states that its success on the motion in limine "led to Silverbell conceding that its bad faith counterclaim had no merit and dismissing this claim on the eve of trial." (*Id.* at 9). However, after reviewing the record, the Court finds there is no support for this statement; the Court does not believe Defendant ever expressly conceded that "its bad faith counterclaim had no merit." (*Id.*). Even though Lexington includes an email between the parties' counsel in which counsel for Defendants states that "Defendants may be willing to agree to dismiss its bad faith claim for a waiver of fees and costs as to that claim only, and with a stipulation that certain witnesses and evidence would no longer be relevant on the breach of contract/coverage

---

[5] Specifically, Defendants were entitled to summary judgment on Count I (Exhaustion and Defense), Count XII (Cross Suits), Count XIII (Cooperation), Count XIV (Assumption of an Obligation), Count XV (Transfer of Rights Without Consent), and Count XVI (Reasonableness and Collusion). (Doc. 323 at 49–50).

[6] The counts of Lexington's FAC that remained for trial were: Count II (Property Damage), Count III (Policy Period), Count IV (Occurrence), Count V (Property Damage Exclusions), Count VI (Professional Liability), Count VII (Prior Acts), Count VIII (Prior Notice), Count IX (Mold), Count X (Breach of Contract), and Count XI (Independent Contractor). (Doc. 323 at 49–50).

claim only[,]" (Doc. 504-1 at 15), this is not evidence of Defendants conceding that their bad faith claim "has no merit." Further, Lexington's assertion that it "obtained a dismissal of the bad faith counterclaim," (Doc. 503 at 6), seems to imply that Lexington did so single-handedly when, in fact, Defendants stipulated to the dismissal. Notwithstanding, regardless of any procedural reasons Defendants may have had for their stipulation, the dismissal of the bad faith counterclaim weighs slightly in Lexington's favor.

Significantly, Defendants prevailed on each Count of Lexington's FAC remaining at the time of trial (Counts II–XI), and on Count I of Silverbell's Counterclaim. (Doc. 486 at 1). Consequently, the Court entered judgment on each of these Counts in favor of Defendants and ordered that Silverbell recover damages in the amount of $3,410,000.01, subject to pre-judgment and post-judgment interest, from Lexington. (*Id.* at 1–2). Although Lexington states that "Silverbell ultimately prevailed at trial on a single coverage issue" after "the jury was asked just one question, which it answered in favor of Silverbell," (Doc. 503 at 4), Defendants actually succeeded in "proving that Lexington owed both a defense and coverage/indemnity obligation to Scott Homes," (Doc. 494 at 14). Further, Defendants "prevailed on all of the Counts for Declaratory Relief alleged by Lexington regarding the 2002 Lexington Excess Policy." (*Id.* at 10). That Defendants obtained relief in the form of monetary damages totaling $4,331,507.61 (with pre-judgment interest included) after litigating all of the claims and counterclaims, while Lexington was awarded nothing, "is an important item to consider when deciding who is the prevailing party[.]" *Sanborn*, 874 P.2d at 987 (citing *Ocean W. Contractors, Inc.*, 600 P.2d at 1105).

Lexington further contends that its "successful claims and defenses dramatically reduced [the value of] Silverbell's counterclaims from $21 million to $4,331,507.67, a reduction of almost eighty percent (80%)." (Doc. 503 at 7). In support of this assertion, Lexington points to its victory on Defendants' punitive damages counterclaim on summary judgment, as well as the stipulated dismissal of Defendants' bad faith

counterclaim. (*Id.*). Lexington also alleges that it "prevailed on a contractual claim regarding offsets in the parties' post-trial motions," in which Lexington "succeeded in reducing Silverbell's recovery even further" as a result of its receipt of "$2,589,999.99 in offsets." (*Id.* at 6–7).

However, the fact that Defendants did not recover the full measure of relief they requested "does not mean that [they are] not the successful party." *Berry*, 261 P.3d at 788 (internal citation omitted); *see also Barth v. A. & B. Schuster Co.*, 220 P. 391, 393 (Ariz. 1923) (awarding appellant all taxable costs, even though appellant sued for $600.00 but only recovered a judgment for damages of $20.50, because appellant was "successful in obtaining the judgment"). In fact, "Arizona courts routinely reject the notion that the percentage of recovery is an indication of the prevailing party." *Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F. Supp. 2d 1084, 1099 (D. Ariz. 2005) (citations omitted). Although the $4,331,507.67 judgment was far less than Defendants sought, it was still Silverbell—not Lexington—who left trial with a favorable judgment on the contractual claims regarding coverage under the Lexington policy. Accordingly, the Court finds that Defendants are the successful party.

Further, "when a case involves several claims based upon different facts or legal theories, as here, the court may decline to award fees for those unsuccessful separate and distinct clams, and such reductions are noteworthy to the prevailing party determination." *Am. Power Prods., Inc.*, 2016 WL 2930686, at *3 (internal quotations and punctuation omitted) (citing *Berry*, 261 P.3d at 789). As a result, the Court will reduce the fees awarded to Defendants because they were not successful on their bad faith and punitive damages counterclaims and failed to deduct hours expended on these claims from their fee request.[7] Despite this reduction, however, the Court still has a reasonable basis for finding that Defendants were the prevailing party under the totality of the litigation test.

Lexington argues *Schwartz*, 800 P.2d at 20, "is instructive in the present case."

---

[7] See Section III, B of this Order for further discussion of the reductions to Defendants' fees.

(Doc. 503 at 6). The Court disagrees. In *Schwartz*, the plaintiffs filed breach of contract and bad faith claims against their insurer. *Schwartz*, 800 P.2d at 21. Following trial, the jury awarded the plaintiffs a monetary "judgment on the contract action, but denied relief on the bad faith claim." *Id.* However, the trial court awarded the defendant "a portion of its attorneys' fees and all of its costs incurred in the defense of both claims" after holding that, "based upon the 'totality of the litigation,' [the defendant] was the successful party." *Id.* at 25. On appeal, the court noted the defendant had "successfully defended the bad faith claim," a "major issue" in the litigation as shown by "the substantial disparity in the relief requested" by the plaintiff on the bad faith claim compared to the $2,000.00 breach of contract claim. *Id.* Accordingly, the Arizona Court of Appeals affirmed the trial court's finding that the defendant was the prevailing party because it had succeeded on the bad faith claim, the driving force in the case. *Id.* at 25–26.[8]

Unlike *Schwartz*, this case was not driven by a single "major issue." Rather, Lexington alleged sixteen claims and Defendant alleged two counterclaims. (Docs. 10, 270). At the time of trial, eleven of these counts remained to be resolved (Doc. 486 at 1). Further, unlike the plaintiff in *Schwartz*, Lexington did not successfully *defend* Defendants' bad faith claim *at trial*. Rather, the parties stipulated to the dismissal of the bad faith counterclaim *before trial*. (Doc. 406).[9] Most notably, however, unlike the defendant in *Schwartz*, Defendants here successfully defended against *each* claim alleged by Lexington that remained for trial. (Doc. 486). In fact, Defendants successfully defended against each and every claim alleged by Lexington in its FAC, (Doc. 270), as those of Lexington's claims which were not tried were previously dismissed upon Defendants' Motion for Summary Judgment, (Doc. 323 at 49–50). As the present case is

---

[8] Significantly, however, *Schwartz* "does not hold that an award to the insured, [the plaintiff,] or no award at all, would have been an abuse of discretion." *Uyleman v. D.S. Rentco*, 981 P.2d 1081, 1086 (Ariz. Ct. App. 1999). Rather, "*Schwartz* merely holds that the trial court was within its discretion" to make such an award. *Id.*

[9] *But see Fulton Homes Corp.*, 155 P.3d at 1096 (holding that third-party defendants are entitled to an award of attorneys' fees where defendants succeeded in "establishing a 'just defense'" leading to the stipulated dismissal of the claims against them).

factually distinguishable from *Schwartz*, analysis under the "totality of the litigation" test lends the Court to a disparate result. Accordingly, the Court holds that Defendants were the successful party in this action.

### 3.     Discretion in Awarding Attorneys' Fees

As noted by Defendants, (Doc. 494 at 9), "[t]he successful party in an action to determine insurance coverage may recover attorneys' fees under A.R.S. § 12-341.01 at the discretion of the court." *Progressive Classic Ins. Co. v. Blaud*, 132 P.3d 298, 303 (Ariz. Ct. App. 2006) (citing *Nationwide Mut. Ins. Co. v. Granillo*, 573 P.2d 80, 86 (Ariz. Ct. App. 1977)). As "mere eligibility [under § 12-341.01(A)] does not establish entitlement to fees," however, the Court must examine the six *Associated Indemnity* factors listed above to determine whether an award is appropriate. *Harris v. Maricopa Cty. Super. Ct.*, 631 F.3d 963, 974 (9th Cir. 2011) (quoting *Wagenseller*, 710 P.2d at 1049); *see Associated Indem. Corp.*, 694 P.2d at 1184. Each factor is addressed below.

### a.     Whether Lexington's Claims or Defenses Were Meritorious

The first factor, the merits of the unsuccessful party's claim or defense, weighs in favor of an award of attorneys' fees. Defendants argue that "Lexington's claims in this case, as well as the basis for its denials to Scott Homes in the underlying case, were without merit." (Doc. 494 at 12). In support of their argument, Defendants cite the Court's determination on summary judgment that the "'underlying insurance rulings' were made based upon the plain and ordinary meaning of the terms of the Lexington policy." (Doc. 494 at 12) (citing Doc. 159). Accordingly, Defendants state, "[t]here was no evidence to refute Evanston's proper exhaustion." (*Id.* at 13). Defendants also point to Lexington's unsupported contention at trial that "there was less than $1 million in damages covered under the 2002 Lexington Excess Policy" in support of its position that "all of Lexington's claims and contentions in this case have lacked factual and/or evidentiary support." (*Id.*).

Contrarily, Lexington notes that "[a] claim can have merit, even if it does not succeed." (Doc. 503 at 8) (citing *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 791 P.2d

1094, 1099 (Ariz. Ct. App. 1990)). Accordingly, Lexington contends, "the Court found that ten of Lexington's coverage claims were meritorious and allowed them to be presented to the jury." (Doc. 503 at 8–9). Additionally, Lexington notes, "[t]he Court also found that Lexington was entitled to judgment, as a matter of law, on Silverbell's counterclaim for punitive damages." (*Id.* at 9). As a result, Lexington asserts that "[t]hese rulings establish that Lexington's claims and defenses to the counterclaims were not only meritorious, but also successful." (*Id.*).

While Lexington may have successfully defended against Defendants' punitive damages counterclaim on summary judgment, (Doc. 323 at 50), Lexington ultimately did not succeed on a single claim alleged in its FAC, (Docs. 270, 323, 486). Rather, Defendants prevailed on the merits on Counts I, XII, XIII, XIV, XV and XVI of Lexington's FAC via summary judgment, (Doc. 323 at 49–50), and later prevailed on all Counts of Lexington's FAC that remained for trial, (Doc. 486 at 1). That ten of Lexington's claims survived summary judgment and were presented to the jury might, in a case factually distinguishable from the present action, establish that these claims are meritorious.[10] Nevertheless, the facts in this case, namely that "Lexington's counsel has a history of failing to comply with the rules governing practice in the District of Arizona," (Doc. 323 at 48), support the contention that Lexington's claims are not meritorious. For instance, when ruling on Lexington's Rule 11 Motion, (Doc. 298), the Court noted:

> Lexington misquoted the Settlement Agreement in a manner tending to cause the reader to draw an inference directly contrary to the meaning of the quoted language. The Court noted that at least one other court found substantially equivalent conduct to be sanctionable under Rule 11 and admonished Lexington. *See* (Doc. 159 at 13 n.7). Additionally, Lexington's second motion for summary judgment, Lexington's response to Silverbell's motion to summary judgment, and Lexington's reply in support of its

---

[10] For example, in *Goldberg v. Pac. Indem. Co.* the court found that the plaintiffs' breach of contract claim had merit despite the fact that the jury did not find in their favor on that contract claim. No. 2: CV-05-2670-PHX-JAT, 2009 WL 1327528, at *2 (D. Ariz. May 13, 2009). The court also found, however, that the plaintiffs' bad faith and stigma damages claims, on which the court had granted summary judgment in favor of the defendants, were not meritorious. *Id.* As a result, the court determined that "the first *Associated Indemnity* factor marginally favors Plaintiffs." *Id.*

> motion for summary judgment violate Local Rule 7.2(e), even after the Court excludes the caption page and the certificate of service from the page counts. Finally, Lexington's Rule 11 motion is not only frivolous on its merits but also procedurally: Lexington could have used its reply to adequately address the issue.

(Doc. 323 at 48). Accordingly, the Court stated that it "is convinced that awarding Defendants its reasonable expenses incurred in connection with Lexington's [Rule 11] motion is necessary to deter Lexington from future sanctionable conduct." (*Id.*). In light of the fact that Lexington's defense of Silverbell's punitive damages counterclaim was meritorious, while its claims in its FAC—and in its other representations to the Court— were not, the Court finds that this first factor weighs in favor of an award of attorneys' fees. *See Glendale & 27th Investments LLC v. Delos Ins. Co.*, No. 2: CV-10-0673-PHX-SRB, 2013 WL 11311227, at *2 (D. Ariz. May 6, 2013) (finding that the defendant's defense was not meritorious even though the jury awarded the plaintiff much "less than what it asked for" where the jury not only found against the defendant but found that the defendant had acted in bad faith).

### b.        Whether Litigation Could Have Been Avoided

The second factor, whether litigation could have been avoided or settled, supports an award of attorneys' fees. Defendants state, "Silverbell has been ready, willing and able to discuss settlement with Lexington during the underlying case and during this case[,]" but "Lexington has simply ignored all settlement communications and refused to discuss settlement." (Doc. 494 at 13). To date, "Lexington has never made a settlement offer in this case." (*Id.*). Defendants also assert, "Lexington demanded that this case proceed to a jury trial." (*Id.* at 13–14). Lexington contends, however, that it "never had an opportunity to resolve this case for an amount less than the judgment, Defendants' efforts to resolve this case were completely superfluous in achieving the ultimate result, and Defendants could have avoided this litigation by seeking full and complete recovery from other responsible entities." (Doc. 503 at 11).

Nonetheless, had Lexington accepted either of Defendants' settlement offers, this

matter could have avoided trial. Although Lexington points to Defendants' first settlement letter expressly stating that it was "not intended to begin a negotiation or solicit a counter-offer," (Doc. 504-1 at 5), as an indication that Defendants utilized a "take-it-or-leave-it approach to settlement," (Doc. 503 at 10–11), settlement negotiations are not a "one-way street"; Lexington could have easily sent Defendant a letter or email with a settlement figure that they felt was reasonable at any point throughout the litigation, but chose not to do so. Even though Defendants themselves call this letter a "settlement demand," (Doc. 504 at 5), Defendants were merely "posturing," a common technique used in settlement negotiations which Lexington, as a sophisticated party, is likely aware. Accordingly, although Lexington contends it "never had an opportunity to resolve this case for an amount less than the judgment," (Doc. 503 at 11), Lexington could have created such an opportunity by extending its own settlement offer to Defendants. *See Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1019–20 (D. Ariz. 1995) (holding that the second factor weighs in favor of an award of attorneys' fees to the plaintiff where the "defendants made virtually no effort to resolve [the] case" by rejecting the plaintiff's settlement offer and refusing to make any counter-offer).

Further, Silverbell acted reasonably by negotiating settlements with all defendants in the underlying defect case. (Doc. 494 at 13 n.4). That Silverbell was unsuccessful in recovering the entirety of the $6 million judgment from the subcontractors and their insurers does not mean "Defendants' efforts to resolve this case were completely superfluous in achieving the ultimate result." (Doc. 503 at 11). Therefore, as litigation may have been avoided had Lexington engaged in settlement discussions, and because Defendants made good faith attempts at settlement, this factor weighs in favor of awarding attorneys' fees.

### c.      Whether Assessing Fees Would Cause Extreme Hardship

The third factor, whether assessing fees against the unsuccessful party would cause extreme hardship, weighs in favor of awarding fees. Defendants state, "Lexington Insurance Company is a wholly owned subsidiary of American International Group,

Inc.—AIG. AIG is one of, if not, the largest insurance companies in the world" with "approximately $63.82 billion in sales/revenue in 2014." (Doc. 494 at 14). Further, "Lexington itself disclosed publically total admitted assets of $25 billion for 2014." (*Id.*). Accordingly, Defendants argue that the instant request for attorneys' fees will not pose an extreme hardship on Lexington. (*Id.*). The Court agrees. Moreover, Lexington did not address this factor in its brief in opposition to Defendants' Motion for Attorneys' Fees, despite the fact that "the party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship." *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. Ct. App. 1990) (citing *SW Cotton Co. v. Ryan*, 199 P. 124, 129 (Ariz. 1921)). Accordingly, this third factor weighs in favor of awarding attorneys' fees to Defendants.

### d.      Whether Defendants Prevailed in Full

The fourth factor, whether the successful party prevailed with respect to all relief sought, weighs against an award of fees. Defendants argue, "Silverbell and Scott Homes prevailed with respect to all relief sought at the time of trial and [are] therefore entitled to an award of attorney's fees." (Doc. 494 at 14). Further, Defendants state, "Silverbell prevailed in all aspects as to Cou[n]t 1 for Breach of Contract including proving that Lexington owed both a defense and coverage/indemnity obligation to Scott Homes." (*Id.*). Finally, Defendants allege that the dismissal by stipulation of the parties of Silverbell's claim for insurance bad faith "was a tactical trial decision." (*Id.*). In opposition, Lexington argues that Defendants did not prevail with respect to all relief sought as "[t]he Court granted summary judgment to Lexington on [Silverbell's] punitive damages counterclaim," awarded Lexington offsets to the judgment, and "dismissed the bad faith counterclaim based on the parties' stipulation[.]" (Doc. 503 at 11–12).

The Court agrees with Lexington. While Defendants are correct that they prevailed "with respect to all relief sought *at the time of trial*," (Doc. 494 at 14) (emphasis added), Defendants did not prevail on the total relief sought in their Counterclaim, *see* (Doc. 10). The distinction is imperative. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet*

*Servs., LLC*, No. 2: CV-11-1212-PHX-DGC, 2012 WL 510490, at *3 (D. Ariz. Feb. 16, 2012) (taking note of "the key difference between [A.R.S.] § 12-348, permitting fees for a party 'which prevails by an adjudication on the merits,' and [A.R.S.] § 12-341.01, permitting fees for a successful party in an 'action' arising out of contract" (citing *Mark Lighting Fixture Co.*, 745 P.2d at 129)). Defendants have pointed to no authority supporting their contention that this fourth factor should be examined as whether the successful party prevailed as to all relief sought *at the time of trial*. As a result, this factor weighs against an award of fees because Defendants did not prevail as to all relief sought throughout the majority of this litigation. Although this factor weighs in Lexington's favor, it does so only slightly; while Defendants "did not prevail with respect to all the relief . . . sought[,]" this does "not lessen the magnitude of the relief [Defendants] obtained." *Carl Karcher Enters., Inc. v. Stine Enters., Inc.*, No. 1: CA-CV-11-0702, 2012 WL 4758017, at *3 (Ariz. Ct. App. Oct. 4, 2012).

### e.       Whether the Legal Issues Were Novel

The fifth factor, the novelty of the issues, is neutral. Defendants state, "there was nothing novel about the basic principles or claims raised in this lawsuit." (Doc. 494 at 14). Defendants concede that "[t]he specific claims at issue in this case, or specific provisions of the Lexington Excess Policy, may have not been previously litigated in this jurisdiction." (*Id.*). "However, Lexington took positions that were contrary to the plain and ordinary meaning of its own insurance policy and clearly not supported by the evidence" so "Silverbell had no choice but to diligently respond to all arguments advanced by Lexington." (*Id.* at 14–15).

Conversely, Lexington alleges that this factor "favors Lexington, as even the Court acknowledged the uncertainty in the law surrounding the threshold issue of exhaustion." (Doc. 503 at 12). Specifically, Lexington points to the Court's previous statement that "[t]he Ninth Circuit Court of Appeals, applying Arizona law, has declined to establish a bright-line rule for determining whether an excess policy is excess to a particular primary policy or is excess to all primary policies." (Doc. 159 at 9). Lexington

also believes there was uncertainty as to "whether the settlement agreement among Silverbell, Scott Homes and Evanston constituted a proper *Damron* or *Morris* agreement, since Lexington was not defending at the time of the agreement, and the Evanston primary policy was not exhausted until the agreement was executed." (Doc. 503 at 12–13).

The Court, however, is not persuaded either way. While it may be true that "[t]he specific claims at issue in this case . . . may have not been previously litigated in this jurisdiction," (Doc. 494 at 14), this does not necessarily mean the legal theories litigated here were novel. Essentially, the parties here had a policy coverage dispute. Similar to *Goldberg v. Pac. Indem. Co.*, "[t]he case certainly presented novel facts, but not necessarily novel legal theories." 2009 WL 1327528, at *4. Further, the Court "finds this case did not present a novel legal question merely because both parties were required to spend considerable time and effort to support their interpretations due to the unusual factual circumstances of this case." *Id.* Additionally, although Lexington believes there was uncertainty as to whether the settlement agreement constituted a *Damron* or *Morris* agreement, the Court previously conclusively established that "[t]he present case involves a *Damron* agreement." (Doc. 323 at 22). Nonetheless, because there is some uncertainty within the Ninth Circuit when "determining whether an excess policy is excess to a particular primary policy or is excess to all primary policies," (Doc. 159 at 9), the Court concludes that this factor is neutral.

### f.      Whether an Award Would Discourage Tenable Claims

The sixth factor, whether the award will overly deter others from bringing meritorious suits, weighs in favor of awarding attorneys' fees. Defendants claim, "[l]itigation is a usual business practice for a large insurer like Lexington, and it will not be discouraged from future litigation when it deems it beneficial or appropriate." (Doc. 494 at 15). The Court agrees. An attorneys' fees award would not "discourage other insurance companies with tenable claims from litigating their contract issues," nor would an award "discourage insurance companies from seeking declaratory relief in

federal court for coverage issues." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2012 WL 510490, at *6.

Although "any award of this magnitude could possibly chill future plaintiffs from bringing meritorious claims," the circumstances of this case do not persuade the Court that "an award of the magnitude suggested by Defendants would automatically deter future litigants[.]" *Goldberg*, 2009 WL 1327528, at *5. Veritably, a fee award in this case might actually "discourage the filing of meritless claims." *Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 2: CV-05-2729-PHX-DGC, 2007 WL 735552, at *4 (D. Ariz. Mar. 6, 2007). Here, Lexington is a large insurer and business entity with experience litigating contract issues. Not only does Lexington have sufficient resources to litigate coverage disputes, but Lexington knew "they would likely be liable for a significant amount of attorney's fees in the event that judgment was entered against them." *Id.*[11] Regardless, Lexington "proceeded to trial, knowing full well the possible consequences of [its] actions." *Id.* Likewise, Lexington did not address this factor in its brief in opposition to Defendants' Motion for Attorneys' Fees. *See* (Doc. 503). As a result, the Court surmises that this sixth factor is one of the two factors which Lexington concedes do not weigh in its favor. (*Id.* at 13). As an attorneys' fee award to Defendants will not overly deter others from bringing meritorious suits, this sixth factor weighs in favor of a fee award.

### g.    An Award of Attorneys' Fees Is Appropriate

On balance, the relevant six factors outlined in *Associated Indemnity* support an award of fees to Defendants for prevailing in this case. Factors one, two, three and six weigh in favor of awarding attorneys' fees to Defendants. Factor five is neutral. Although factor four weighs against an award of attorneys' fees, it does so only slightly. As a result, the Court will exercise its discretion in awarding attorneys' fees.

---

[11] Lexington, as a sophisticated party, was surely aware that "there was the possibility that [it] might be assessed attorneys' fees in the event that [it] lost this action." *Marvin Johnson, P.C.*, 888 F. Supp. at 1019. In fact, Lexington itself requested an award of attorneys' fees under A.R.S. § 12-341.01 in its FAC. (Doc. 270 at 31).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.     Reasonableness of the Requested Attorneys' Fees Award

Defendants seek an award of attorneys' fees and taxable costs totaling $1,558,099.04, calculated under Defendants' contingent fee agreement. (Doc. 494 at 6). Alternatively, Defendants' seek an award in the amount of $1,015,650.00 "based upon services performed and reasonable hourly rates for those services." (*Id.*).[12] After analyzing the itemization of attorney services rendered, the Court holds that an award of $972,878.30 in attorneys' fees and costs is reasonable, as set forth below.

The parties dispute whether the Court should award fees based on the contingent fee agreement or the lodestar method. Defendants request that the forty percent (40%) "contingency fee be awarded in this case as it is a reasonable fee based upon the facts and circumstances of this action." (Doc. 494 at 15). Lexington, on the other hand, requests that "if the Court is inclined to award attorneys' fees to Defendants, the Court should do so under the lodestar method, which will reimburse Defendants for the costs in pursuing only their successful and meritorious defenses and counterclaims." (Doc. 503 at 14–15). Lexington believes "[t]he Court should not reward Defendants for their efforts pursuing these meritless and unsuccessful counterclaims by awarding their fees based on the contingency fee agreement." (*Id.* at 14).

In contingent fee cases, "as in other cases, '[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Glendale & 27th Investments LLC*, 2013 WL 11311227, at *3 (quoting *Sanborn*, 874 P.2d at 987). This is the lodestar figure. *Id.* Accordingly, the Court will begin by using the lodestar method to determine a reasonable fee. *See Manone*, 2016 WL 1059539, at *3 ("It would be improper for the Court to consider attorneys' fees based exclusively on the contingency fee agreement."); *Gametech Int'l, Inc.*, 380 F. Supp. 2d at 1096 ("The lodestar analysis is used where fees

---

[12] The amount Defendants have requested also includes "reasonable attorneys' fees incurred in prosecuting this fee request." (Doc. 494 at 10). Under Arizona law, "reasonable attorneys' fees incurred in preparing the fee application are recoverable[.]" *Gametech Int'l, Inc.*, 380 F. Supp. 2d at 1101.

are not actually paid on an hourly basis and where the prevailing party does not have an agreement with counsel setting the attorneys' billing rate for the representation."); *Sanborn*, 874 P.2d at 987 (applying the lodestar method and holding that it is improper to award a contingent fee amount without further inquiry into the reasonableness of the fee).

### 1.     Reasonable Hourly Rate

Under the lodestar analysis, the Court must first decide whether the hourly billing rate is reasonable. *See Schweiger*, 673 P.2d at 931. "In computing the lodestar, the hourly billing rate to be applied is the 'market rate,' i.e., the hourly rate normally charged in the community where counsel practices." *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. MDL-08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. Aug. 31, 2010) (citations omitted).[13] Although the fees in this case were not paid by the client on an hourly basis, the declarations submitted by counsel for Defendants, as well as the contingent fee agreements between Defendants and their counsel, include the hourly billing rates of counsel and their staff. *See* (Doc. 494-2, Doc. 494-7, Doc. 494-9, Doc. 494-10, Doc. 494-11, Doc. 494-12, Doc. 494-13). In order to determine the reasonable hourly billing rate, the Court compared these billing rates with the market rates in the community.

At Elliot & Elliott and Israel & Gerity, the firms Defendants contracted with for representation in this matter, the hourly billing rate for partners ranges from $375.00 to $500.00 per hour. (*Id.*). For associate attorneys, the hourly billing rate ranges from $250.00 to $300.00. (*Id.*). Additionally, the hourly billing rate of Elliott & Elliott's paralegal is $135.00, while Elliott & Elliott's legal assistants bill at $70.00 per hour. (*Id.*). Based on the market rates in the Phoenix area, the Court finds that these rates are reasonable. *See, e.g., Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. 2: CV-09-1489-PHX-SRB, 2013 WL 11311729, at *7 (D. Ariz. Apr. 17, 2013) (finding that local Phoenix attorneys' hourly rates ranging from $120.00 to $520.00 were reasonable);

---

[13] While not the case in contingent-fee litigation, "in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Schweiger*, 673 P.2d at 931–32.

*Ogden v. CDI Corp.*, 2: CV-08-2180-PHX-DGC, 2013 WL 1149913, at *4–5 (D. Ariz. Oct. 11, 2012) (finding hourly rates of $300.00 for a partner, $230.00 for a senior associate, and $150.00 for an experienced paralegal to be reasonable as these rates are "roughly equal to or lower than the market rate in this jurisdiction"); *Reg'l Care Servs. Corp. v. Companion Life Ins. Co.*, No. 2: CV-10-2597-PHX-LOA, 2012 WL 2260984, at *3 (D. Ariz. June 15, 2012) (finding that "the varying hourly rates between $170.00 and $425.00 per hour depending on the experience of the attorney or paralegal performing the legal service" are reasonable).

Further, Defendants' supported their fee request with declarations from counsel describing their experience, credentials, and prevailing market rates. (Doc. 494-9, Doc. 494-10, Doc. 494-11, Doc. 494-12, Doc. 494-13).[14] In particular, one such declaration states that:

> [A] 2010 NJL Billing Rates survey . . . [indicates that] the firm of Snell & Wilmer, Phoenix counsel for Lexington in this case, disclosed partner hourly rates as high as $795.00 and associate hourly rates as high as $550.00. The same publication shows that the firm of Hodgson Russ, trial counsel for Lexington in this case, disclosed partner hourly rates as high as $665.00 and associate hourly rates as high as $410.00.

(Doc. 494-9 at 11).

Furthermore, a partner from Elliott & Elliott's declaration indicates that he "reviewed a motion for attorneys' fees filed by one of the firms defending Lexington, Snell & Wilmer, of Phoenix, Arizona in this Court in July, 2015" and noted that "Snell & Wilmer charges $650 - $690 per hour for partners less experienced" than he. (Doc. 494-10 at 5). Specifically, this partner has practiced law since 1976, is AV rated by Martindale & Hubble, and has an hourly rate of $500.00. (*Id.* at 3–4). Another partner, whose hourly rate is also $500.00 and is similarly AV rated, has practiced law since

---

[14] *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000) (holding that district court did not err by relying on declarations submitted by counsel indicating the prevailing market rate in the community when establishing the appropriate hourly rate for lodestar purposes).

1   1974. (Doc. 494-11 at 3, 5). Here, Defendants were "entitled to retain competent,

2   experienced counsel" to represent them, and, given counsel's experience and credentials,

3   "a commensurate hourly rate was not unreasonable." *Assyia v. State Farm Mut. Auto. Ins.*

4   *Co.*, 273 P.3d 668, 675 (Ariz. Ct. App. 2012) (finding that a $400 hourly rate for an

5   attorney with over 30 years of experience is reasonable). Additionally, Lexington does

6   not challenge the hourly rates that Defendants' attorneys' charged. *See* (Doc. 503).[15]

7   Accordingly, the Court holds that the hourly rates charged by counsel for Defendants and

8   their staff are reasonable.

9   ## 2.        Hours Reasonably Expended

10  Second, the Court "must determine the reasonableness of the hours expended on

11  the case." *Schrum v. Burlington N. Santa Fe Ry. Co.*, No. 2: CV-02-0619-PHX-RCB,

12  2008 WL 2278137, at *5 (D. Ariz. May 30, 2008) (citing *Schweiger*, 673 P.2d at 932).

13  Generally, "[t]he prevailing party . . . is 'entitled to recover a reasonable attorney's fee

14  for every item of service which, at the time rendered, would have been undertaken by a

15  reasonable and prudent lawyer to advance or protect his client's interest[.]'" *Schweiger*,

16  673 P.2d at 932 (quoting *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,

17  676 F.2d 1291, 1313 (9th Cir. 1982)). Further, "[i]n order for the court to make a

18  determination that the hours claimed are justified, the fee application must be in sufficient

19  detail to enable the court to assess the reasonableness of the time incurred." *Schweiger*,

20  673 P.2d at 932. "An award may also be reduced for hours not 'reasonably expended.'"

21  *Travelers Indem. Co. v. Crown Corr, Inc.*, No. 2: CV-11-0965-PHX-JAT, 2012 WL

22  2798653, at *6 (D. Ariz. July 9, 2012) (quoting *Schweiger*, 673 P.2d at 932). As stated by

23  the Supreme Court in *Hensley v. Eckerhart*:

24              Counsel for the prevailing party should make a good faith
              effort to exclude from a fee request hours that are excessive,
25              redundant, or otherwise unnecessary, just as a lawyer in
              private practice ethically is obligated to exclude such hours

---

27  [15] "Once a party establishes its entitlement to fees and meets the minimum
28  requirements in its application and affidavit for fees, the burden shifts to the party
opposing the fee award to demonstrate the impropriety or unreasonableness of the
requested fees." *Nolan*, 167 P.3d at 1285–86.

from his fee submission.

461 U.S. 424, 434 (1983).

Although Defendants' fee application and counsels' fee affidavits, as required, disclosed "the type of legal services provided, the date the service was provided, the attorney providing the service . . . and the time spent in providing the service," *Assyia*, 273 P.3d at 675, Defendants failed to provide the total number of hours each attorney, paralegal, or legal assistant expended on this case. Due to the extensive number of billing entries and the fact that more than thirteen individuals billed for work on this case, the Court was originally unable to "make a determination that the hours claimed are justified," as a result of this deficiency. *Schweiger*, 673 P.2d at 932. Accordingly, on Defendants' behalf, the Court reviewed over 2,200 billable entries and totaled the hours that each attorney and staff member expended.

After the Court's discretionary deduction of hours "not reasonably expended," as outlined below, counsel for Defendants spent a total of 2,891.69 hours on this litigation.[16] The Court does not believe this is an unreasonable or inordinate amount of time to spend on a case of this type "that has been actively ongoing for more than three (3) years." (Doc. 494 at 16). *See, e.g., Glendale & 27th Investments LLC*, 2013 WL 11311227, at *3 (Finding that the 2,058.50 hours that the plaintiff's counsel and paralegal spent on the litigation was reasonable based on the fact that the case had been ongoing for more than three years); *Greko v. Diesel U.S.A., Inc.*, No. CV-10-2576-NC, 2013 WL 1789602, at *10 (N.D. Cal. Apr. 26, 2013) (Finding that "[g]iven the length of the lawsuit and the disputes over the course of the litigation[,]" the 2,500 hours spent by . . . counsel working on a contingency basis from 2010 through January 2013 was "reasonable").

### a.    Clerical Tasks

Lexington contends, "A.R.S. § 12-341.01 allows recovery of only reasonable

---

[16] See the spreadsheets attached as appendices to this Order illustrating the total amount of hours counsel and staff for Defendants expended on this litigation, and the line-by-line deductions made by the Court for hours not reasonably expended.

attorney fees." (Doc. 503 at 16). Accordingly, Lexington alleges that clerical or secretarial tasks "are not compensable under this statute." (*Id.* at 17). Lexington states, "Defendants' billing records are rife with secretarial tasks, such as docketing, calendaring, indexing, filing, and organizing pleadings[,]" which are "non-compensable overhead costs" that "should not be awarded." (*Id.*). Although Defendants allege in their Motion for Attorneys' Fees that they "subtracted clerical time that would normally be billed to the client for docketing, calendaring, and filing case related documents," (Doc. 494 at 20), Lexington argues that "it is clear that they did not do so completely and/or accurately," (Doc. 503 at 17).

The Court agrees with Lexington that "tasks which are clerical in nature are not recoverable." *Pearson v. Nat'l Credit Sys., Inc.*, No. 2: CV-10-0526-PHX-MHM, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13. 2010); *see also Neil v. Comm'r of Soc. Sec.*, 495 F. App'x. 845, 847 (9th Cir. 2012) (holding that "the district court did not abuse its discretion in declining to award [] attorney's fees for purely clerical tasks such as filing documents and preparing and serving summons"); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that clerical tasks such as filing and document organization "should have been subsumed in firm overhead rather than billed at paralegal rates"). After thorough review of the billing entries, the Court finds that Defendants did not accurately deduct each clerical entry, such as entries for printing, e-filing and downloading, from their request from attorneys' fees. As a result, the Court noted each clerical entry that was not deducted by Defendants, s*ee* (Doc. 494–14), and reduced the hours expended by counsel for Defendants accordingly.

### b.    Bad Faith and Punitive Damages

Defendants contend that they "deducted bad faith related fees and cost[s] from [their] claim." (Doc. 494 at 20). However, Lexington states, "[e]ven a cursory review of Defendants' billing records . . . reveals time entries for 'bad faith' related work." (Doc. 503 at 15). Lexington believes "Defendants' purported reduction for 'bad faith related fees' does not include other discovery regarding bad faith," nor does it "include

time spent on dispositive motions, motions in limine, or trial preparation, each of which related, in part, to the unsuccessful counterclaims." (*Id.*). Further, "[a]long with the punitive damages counterclaim, the bad faith counterclaim was a focal point of discovery and a major issue in this case." (*Id.* at 16). Finally, Lexington alleges that Defendants did not deduct anything for their "unsuccessful punitive damages counterclaim." (*Id.* at 15). As "Defendants' billing records do not provide sufficient details to allow Lexington to determine exactly how much time was spent on the unsuccessful and meritless counterclaims," Lexington asks the Court to award "a further equitable deduction" to account for "time that was lumped into other tasks." (*Id.* at 16).

Upon careful review of the time entries, the Court agrees that Defendants' have failed to "accurately and/or completely," (*id.*), deduct each time entry related to Defendants' bad faith counterclaim. Accordingly, the Court noted each entry related to bad faith which Defendants did not deduct previously, *see* (Doc. 494–15), and reduced the hours expended by counsel for Defendants accordingly. However, the Court declines to make a "further equitable deduction" as the Court's line-by-line deductions for bad faith and punitive damages are already "sufficient to reflect time devoted to unsuccessful claims." *Gametech Int'l, Inc.*, 380 F. Supp. 2d at 1100. The Court is free to exercise this discretion as "there is 'no precise rule or formula' for determining how to reduce an award for time spent on unsuccessful claims" under Arizona law. *Id.* (citing *Schweiger*, 673 P.2d at 933).

### c.      Work Related to Scott Homes' Defense

Lexington states, "[b]oth Scott Homes and Silverbell seek their attorneys' fees, notwithstanding that Scott Homes was never burdened with the 'expense of litigation.'" (Doc. 503 at 17). Lexington contends that "[t]his is readily apparent from the retainer agreements" between Defendants and their common counsel, where defense counsel agrees to defend Scott Homes but charges it no attorneys' fees for doing so. (*Id.*); *see* (Doc. 494-2 at 16–17). As Defendants do not address the defense of Scott Homes in their Motion for Attorneys' Fees, (Doc. 494), Lexington believes "Defendants are attempting

to recover a windfall: compensation for services that their attorneys agreed at the outset to perform free-of-charge," (Doc. 503 at 17). Accordingly, Lexington requests Defendants' attorneys' fees request be reduced by "the amount actually expended on Scott Home[']s defense" in the amount of $3,025.00. (*Id.* at 18). Lexington also urges the Court to award a "further equitable deduction" as "this estimate also excludes certain time that was lumped into other tasks." (*Id.*). The Court disagrees with Lexington.

To begin, Lexington is missing a significant nuance in the Attorney Client Representation Agreement between Scott Homes and defense counsel. *See* (Doc. 494-2). Specifically, this Agreement states that "*Scott Homes* will not be responsible for any attorneys' fees and costs during the time when Elliott & Elliott represents Scott Homes[.]" (*Id.* at 16) (emphasis added). On the next page, the Agreement maintains, "Our firm has agreed to defend you in this action and charge *you* no attorneys' fees in doing so." (*Id.* at 17). (emphasis added). Nowhere in this Agreement does defense counsel state that they are agreeing to defend Scott Homes "free of charge." *See generally* (*id.*). Rather, this Agreement is only contending that defense counsel is not charging Scott Homes for its legal representation, (*id.*); this does not rule out the possibility that another party—like Silverbell—is footing the bill.

Further, although the Court could not locate any case law from Arizona or within the Ninth Circuit which "permits an attorneys' fee award for gratis services" under A.R.S. §12-341.01, (*id.* at 17), there are persuasive authorities from other jurisdictions indicating that "[a]n award of attorneys' fees and costs may be appropriate even when the attorney has agreed to bring an action . . . free of charge." *Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 792 (Pa. Super. 2006) (holding that "the form of fee arrangement between the prevailing party and counsel will generally have little or nothing to do with whether the purposes of the statute are served in the *decision to award* fees and costs"); *see also Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234 (4th Cir. 2001) (stating that "courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the

client"). Accordingly, the Court will not reduce counsel for Defendants' hours for any work related to the defense of Scott Homes as the Court believes the form of fee arrangement between Scott Homes and defense counsel is immaterial to the Court's decision to award attorneys' fees to Defendants under A.R.S. § 12-341.01.

### d. Repetitive, Unclear, and Block-Billing Time Entries

Lexington asks that the Court reduce Defendants' attorneys' fees award by $64,951.25 "for time entries that are vague, general, unclear, and repetitive of other entries," and for block billing. (Doc. 503 at 18). In support of its request, Lexington cites Local Rule 54.2(e) which states, "The itemized statement for legal services rendered shall reflect . . . [t]he time devoted to each individual unrelated task performed on such day." LRCiv 54.2(e). Lexington also references Local Rule 54.2(d)(4)(c), which requires that the party requesting an award of attorneys' fees submit an affidavit identifying "whether the affiant[, moving counsel,] has eliminated unnecessary, duplicative and excessive time[.]" LRCiv 54.2(d)(4)(c); *see* (Doc. 503 at 18).

The Court agrees that the practice of block billing violates Local Rule 54.2(e). Lexington has only pointed out one entry, in specific, on which it objects to on this ground. After reviewing this entry for 4.10 hours of work completed by K. McQuillin on August 27, 2014, the Court determined that the time billed on that date does not relate to a single task. As a result, the Court reduced Defendants' fee award by deducting twenty percent (20%) of this entry from Defendants' total award, as this entry does not fully comport with the requirements of Local Rule 54.2(e). "This reduction is wholly justified" as this entry's lack of adequate description for the services rendered "hindered the court's ability to make the critical reasonableness determination" for this entry. *See, e.g., Alzate v. Creative Man Painting LLC*, No. 2: CV-13-02129-PHX-BSB, 2015 WL 789727, at *7 (D. Ariz. Feb. 25, 2015) (reducing the attorneys' fees for hours billed on certain dates by ten percent because the time billed on those dates did "not relate to a single task").

Furthermore, the Court also agrees with Lexington that Defendants' attorneys' fees award should be reduced for any repetitive entries. However, after reviewing

Defendants' time entries in their entirety, the Court notes that the substantial amount Lexington requests be deducted is extreme and unwarranted in proportion to the actual amount of repetitive entries Defendants include. Viewing Defendants' attorneys' fees request as a whole, the limited instances of repetitive entries do not prevent the Court from assessing the reasonableness of the hours expended by defense counsel. The Court therefore declines to apply the reduction in the amount of $64,951.25 that Lexington suggests. Instead, in its discretion, the Court noted each repetitive entry and reduced defense counsel's hours accordingly.

### 3.    Total Lodestar Award

The lodestar figure of the presumed reasonable attorneys' fee award is $972,878.30. To reach this presumed reasonable fee award, the Court first multiplied the reasonable hourly rate of each individual who worked on Defendants' case by the hours reasonably expended by that individual, including any hourly deductions.[17] Then, the Court found the sum of each of these individual totals to reach $972,878.30.[18]

Although Defendants alternatively request a fee award in the amount of $1,015,650.00 "based upon services performed and reasonable hourly rates for those

---

[17] Attorney G. Meisenhelder indicates in his declaration that his hourly rate increased from $275.00 per hour to $300.00 hour on January 1, 2015. (Doc. 494-9 at 4). Despite this increase, this Court has calculated Mr. Meisenhelder's hourly rate at $275.00 per hour as Mr. Meisenhelder did not expend any hours on this case following his rate change from $275.00 to $300.00. *See* (Doc. 494-6).

[18] "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted); *see also Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1260 n.2, 1262 (9th Cir. 1987) (holding that the lodestar figure of the "reasonable" fee is calculated by multiplying hours spent by *each* attorney by a reasonable hourly rate) (emphasis added); *Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1047 (D. Haw. 2011) (calculating the lodestar amount by multiplying the total hours requested—less hours deducted for excessive, duplicative, clerical and non-compensable time—by each attorney's reasonable hourly rate); *Ko Olina Dev., LLC v. Centex Homes*, No. CV-09-00272-DAE-LEK, 2011 WL 1235548, at *13 (D. Haw. Mar. 29, 2011) (determining the total lodestar by first multiplying each attorney or staff member's reasonable hourly rate by the hours expended, less hourly reductions for block billing, clerical tasks, excessive and duplicative time, and non-compensable entries, and then applying a twenty percent reduction "for claims for which attorneys' fees are not available or for which [the requesting party] did not prevail").

services," (Doc. 494 at 6), the Court declines to award Defendants attorneys' fees in this amount. Rather, the Court finds that an award in the amount of $972,878.30 is reasonable given the total lodestar figure, the billing entries Defendants supplied, and the reductions made by the Court. Overall, however, the time and labor required of counsel for Defendants was reasonable in light of the posture of this case.

| Professional | Reasonable Hourly Rate | Hours Reasonably Expended | Total |
| --- | --- | --- | --- |
| J. Elliott, Partner | $500 | 230.53 | $115,265.00 |
| T. Elliott, Partner | $500 | 589.07 | $294,535.00 |
| K. Israel, Partner | $375 | 187.22 | $70,207.50 |
| G. Meisenhelder, Associate | $275 | 1091.10 | $300,052.50 |
| J. Salfiti, Associate | $300 | 308.85 | $92,655.00 |
| M. Sandberg, Associate | $300 | 13.50 | $4,050.00 |
| J. Maltzer, Associate | $250 | 301.13 | $75,282.50 |
| P. Roldan, Associate | $275 | 22.00 | $6,050.00 |
| K. McQuillin, Paralegal | $135 | 67.70 | $9,139.50 |
| L. Jones, Legal Assist. | $70 | 67.18 | $4,702.60 |
| G. Irvin, Legal Assist. | $70 | 2.06 | $144.20 |
| D. Adams, Legal Assist. | $70 | 10.00 | $700.00 |
| Y. Hu, Legal Assist. | $70 | 0.60 | $42.00 |
| A. Hogue, Legal Assistant | $70 | 0.75 | $52.50 |
| **TOTAL LODESTAR FIGURE:** | | | **$972,878.30** |

**4.      Whether the Lodestar Figure Should be Adjusted or Enhanced**

"There is a 'strong presumption' that the lodestar amount represents the 'reasonable' fee." *Leavey*, 2006 WL 1515999, at *25 (citation omitted). Accordingly, "the lodestar figure should be adjusted upward or enhanced only in rare and exceptional circumstances." *Kadish v. Ariz. State Land Dep't*, 868 P.2d 335, 346 (Ariz. Ct. App. 1993) (citations omitted). Furthermore, the fee applicant bears "[t]he burden of proving

that such an adjustment is necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

"Once [the] 'lodestar' figure has been calculated, other factors may be considered" to assess the reasonableness of an attorneys' fee award. *Sanborn*, 874 P.2d at 987. Accordingly, the Court now considers the various factors bearing on the reasonableness of an attorneys' fee award identified in Local Rule 54.2(c)(3). These factors include:

> (A) The time and labor required by counsel; (B) The novelty and difficulty of the questions presented; (C) The skill requisite to perform the legal service properly; (D) The preclusion of other employment by counsel because of the acceptance of the action; (E) The customary fee charged in matters of the type involved; (F) Whether the fee contracted between the attorney and the client is fixed or contingent; (G) Any time limitations imposed by the client or the circumstances; (H) The amount of money, or the value of the rights, involved, and the results obtained; (I) The experience, ability and reputation of counsel; (J) The 'undesirability' of the case; (K) The nature and length of the professional relationship between the attorney and the client; (L) Awards in similar actions; and (M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3). Although Defendants discuss these factors in their supporting memorandum, (Doc. 494 at 16–20), Lexington does not specifically address these factors in its brief in opposition, *see* (Doc. 503).

Regarding the first factor, the time and labor required, this was analyzed in detail in the section of this Order discussing calculation of the lodestar figure, *supra*. Although the hours expended by counsel for Defendants and their staff were ultimately reasonable after the Court's discretionary deduction of hours "not reasonably expended," this first factor favors neither enhancing nor reducing the attorneys' fees award in this case.

As to the second factor, the novelty and difficulty of the legal questions presented, the Court previously addressed this in its discussion of the fifth *Associated Indemnity* factor, *supra*, in its analysis of whether attorneys' fees are warranted. Accordingly, the Court will not discuss this factor in further detail here. Similar to *Leavey*, "[b]ecause the legal issues were not particularly novel, the Court will not enhance the award" based on this second factor. 2006 WL 1515999, at *25. "Likewise, because this case was not a

simple one, the award will not be reduced." *Id.*

Next, the Court considers the third factor, the skill requisite to perform the legal service properly. Not only has this factor already been considered in the Court's calculation of the reasonable hourly rate under the lodestar analysis, but the Court declines to adjust the attorneys' fees award upward merely because counsel for Defendants have many years of experience in insurance litigation. *See Id.* (declining to enhance the attorneys' fees award based on the third factor even though the "[p]laintiff's counsel are experienced in insurance bad faith litigation and possess skills particular to insurance cases that ameliorate the quality of the representation").

In regard to the fourth factor, counsel for Defendants have not presented any evidence indicating that this case has prevented them from seeking other employment, and even expressly stated that "[t]his was not an issue in this matter." (Doc. 494 at 18). Accordingly, the Court refuses to adjust or enhance the award based on this factor. *See St. Bernard v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823, 829 (D. Ariz. 2010) (declining to adjust the fee award based on the fourth factor where neither party presented any evidence that the "case has precluded counsel from seeking other employment").

The fifth factor is the customary fee charged in similar matters. Regardless of whether a contingent fee agreement is typically used in cases of this type, the Court will not adjust the lodestar based on this factor. *See Leavey*, 2006 WL 1515999, at *26 (finding that the fifth factor "does not warrant an adjustment in the lodestar figure" where the plaintiff noted that "the usual fee arrangement in insurance bad faith cases is a contingen[t] fee").

The sixth factor, whether the fee is fixed or contingent, also does not warrant an adjustment in the lodestar figure as "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The Supreme Court's holding in *City of Burlington* states, in relevant part:

> Contingency enhancement is a feature inherent in the contingent-fee model (since attorneys factor in the particular

risks of a case in negotiating their fee and in deciding whether to accept the case). To engraft this feature onto the lodestar model would be to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it. Contingency enhancement is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee.

*Id.* at 566. *See also Leavey*, 2006 WL 1515999, at *26 (declining to enhance the lodestar figure based on the sixth factor where the case involved a contingent fee "because the Supreme Court has held . . . that enhancing a fee award because of contingency is improper").

Furthermore, although Defendants argue that the Court should award attorneys' fees based on the contingent fee agreement with their counsel, Defendants cite no authority for this proposition. Rather, the Court "is not bound by the agreement between the parties." *Schweiger*, 673 P.2d at 932. An award of reasonable attorneys' fees "need not equal or relate to the attorney fees actually paid or contracted[.]" A.R.S. § 12-341.01(B). Additionally, "evidence of reasonableness is required even in contingen[t] fee cases." *Sanborn*, 874 P.2d at 987 (citing *Crews v. Collins*, 680 P.2d 216, 218 (Ariz. Ct. App. 1984). Specifically, *Crews* held that while "[c]ounsel for the plaintiff and the plaintiff were free to enter a contingen[t] agreement," this fee arrangement "does not, per se, establish" that the requested contingent fee "was reasonable" as the "[d]efendants' obligation . . .to pay reasonable attorney's fees" stems "from the express terms of the promissory note and by the terms of A.R.S. § 12-341.01(A)[.]" *Crews*, 680 P.2d at 218. Accordingly, the Court declines to award Defendants the $1,558,099.04 requested under its contingent fee agreement, as this would be an impermissible enhancement to the fee award.

The seventh factor regards time limitations imposed by the client or the circumstances. Defendants do not contend that any such limitations were imposed by the client. (Doc. 494 at 18). Defendants do allege, however, that they "desired that the case be resolved as quickly and efficiently as reasonably possible." (*Id.*). Further, Defendants

did not anticipate the full extent of this Federal Court litigation "[a]s most construction litigation resolves prior to trial." (*Id.*). Regardless, however, the Court declines to adjust or enhance the attorneys' fees award based on this factor as the prospect of trial is inherent in litigation.

The eighth factor the Court considers is the amount involved and the results obtained. The Court previously addressed this factor in great detail in its determination that Defendants are entitled to an award of attorneys' fees as the successful party in this action, *supra*. Accordingly, the Court will not discuss this factor in further detail here, and is not inclined to enhance the award based on this factor.

The ninth factor, the experience, ability and reputation of Defendants' counsel, was already considered in the lodestar analysis and, accordingly, "has been subsumed in the lodestar figure as to what is a reasonable hourly rate[.]" *Leavey*, 2006 WL 1515999, at *27. As a result, the Court will not adjust the attorneys' fees award based on this ninth factor.

Likewise, the tenth factor, the undesirability of the case, also relates to the reasonableness of Defendants' hourly rate. *See St. Bernard*, 782 F. Supp. 2d at 829. As this factor is subsumed in the lodestar figure as well, it "need not be reintroduced as means of adjusting the fee award." *Id.* Accordingly, the Court declines to enhance the award based on this factor.

The eleventh factor is the nature and length of the professional relationship between Defendants and their counsel. As counsel has only represented Defendants throughout the present case, this factor does not warrant an adjustment to the fee award. *See Leavey*, 2006 WL 1515999, at *27 (finding that the eleventh factor "does not compel an adjustment to the fee award" where the relationship between the plaintiff and its counsel "has only extended to the case at bar").

The final factor examines awards in similar actions. In regard to this factor, Defendants solely state, "Silverbell's counsel in this case has successfully represented numerous property owners in construction defect cases." (Doc. 494 at 19). However, this

does not persuade the Court to adjust Defendants' fee award based on this factor.

After examining the above factors bearing on the reasonableness of an attorneys' fee award, the Court concludes that an adjustment to the lodestar figure—the presumptive reasonable fee—is not justified. Defendants have "not demonstrated that this case was rare or exceptional such that an adjustment or multiplier is necessary to arrive at the reasonable fee award." *Leavey*, 2006 WL 1515999, at *27. Therefore, the Court concludes that $972,878.30, the lodestar figure, is a reasonable attorneys' fees award.

## IV.     Conclusion

The Court has itemized its reductions to Defendants' fee award in the spreadsheets attached as appendices to this Order.

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Attorneys' Fees (Doc. 494) is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED** awarding Defendants **$972,878.30 in attorneys' fees and costs**. The Clerk of the Court shall enter judgment on this Order accordingly.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    **IT IS FINALLY ORDERED** that, in the event that either party seek reasonable

2  attorneys' fees and costs incurred for any additional post-trial motions, that party shall

3  file its request for attorneys' fees and costs in compliance with the Court's Local Rules.[19]

4    Dated this 21st day of September, 2016.

5

6

7

8    _____
         James A. Teilborg
         Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22
_____

23    [19] In their Motion for Attorneys' Fees, Defendants state, "Counsel for Lexington
has represented that Lexington intends on filing post-trial motions with this Court[.]"
24  (Doc. 494 at 20). Accordingly, pursuant to A.R.S. § 12-341.01, Defendants request that
"[i]n the event Lexington's post-trial motions are denied, Silverbell and Scott Homes
25  requests that this Court retain jurisdiction and allow Silverbell and Scott Homes to seek
reasonable fees and costs from Lexington in responding to such motions within fourteen
26  (14) days of the Court's ruling on Lexington's last post trial motion." (*Id.*). In Arizona,
"courts have held that attorney's fees may be awarded at more than one point during the
27  course of litigating an action arising out of contract[.]"*Med. Protective Co.*, 740 F.3d at
1284 (holding that because the plaintiff's "postjudgment motion was part of an action
28  arising out of contract," the defendant "may be eligible for an award of attorney's fees for
successfully defending against that motion").